IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shawneen N. Bentley, : 
             Petitioner : 
         : 
        v. : No. 648 C.D. 2017
         : Argued: December 4, 2017
Bureau of Professional and : 
Occupational Affairs, State : 
Board of Cosmetology, : 
             Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE J. WESLEY OLER, JR., Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT          FILED: February 28, 2018

Shawneen Bentley (Bentley) petitions for review of an adjudication of the State Board of Cosmetology (Board) suspending her cosmetology license as a result of her felony convictions. Bentley contends that the Board erred by disregarding her mitigating evidence and abused its discretion by suspending her license for three years for convictions that were totally unrelated to her licensed conduct.

Bentley is licensed by the Board and is employed as a full-time hairstylist at Regis SmartStyle. On February 29, 2016, the Board issued an order to Bentley to show cause why her cosmetology license should not be suspended or revoked in light of her felony convictions in 2013 and 2014. The order to show cause was issued under Section 9124(c)(1) of the Criminal History Record Information Act (CHRIA), 18 Pa. C.S. §9124(c)(1).[1] Bentley filed an answer that admitted the fact of her convictions but asserted that mitigating circumstances

---

[1] The full text is recited, *infra*.

warranted that she be allowed to continue to work in her profession. Specifically, her answer explained that she had served a prison sentence for her crimes; had truthfully disclosed the convictions; needed her license to maintain gainful employment; had never been the subject of any complaints or disciplinary actions related to her license; had turned her life around; and needed her license in order to support her family. Reproduced Record at 100a (R.R. __). A formal hearing was held on December 8, 2016.

At the hearing, the Bureau of Professional and Occupational Affairs (Bureau) introduced certified records of Bentley's felony convictions for forgery; delivery or possession of controlled substances with intent to manufacture or deliver; aggravated assault; escape; and fleeing or attempting to elude a police officer. Notes of Testimony, 12/8/2016, at 7 (N.T. __); R.R. 110a. The Bureau presented no other evidence.

Bentley testified that she was 27 years old and has been a licensed cosmetologist since August 2007. Since obtaining her license, she has worked at various places as a hair stylist. At the time of the hearing, she had been working at Regis SmartStyle for one year and three months, following her release from prison.

Bentley explained the circumstances surrounding her criminal convictions. She stated that at the time she had three young children and was not working as a cosmetologist or at any job. She was living with her children's father, who sold crack cocaine. Bentley began using OxyContin and also selling drugs. She received a two to four-year sentence in state prison for the above-listed convictions. While in prison, Bentley took classes in anger management and worked in maintenance. After serving two years, Bentley was paroled. Within two weeks of her parole, Bentley was hired as a hair stylist at Regis SmartStyle.

2

Bentley testified that she took "full responsibility for what [she] did[.]" N.T. 27; R.R. 130a. She stated:

> I don't do drugs, I don't drink…. The person that I've become today I've worked really hard for. And I wouldn't give it up for anything. I love my job. I need my job…. I love to do hair. I mean, not only do I love it, but that's how I provide for my children.

N.T. 28; R.R. 131a. She testified that she has a support system with her mom, her boyfriend, and her friends at work. Bentley asked for a "second chance to prove to everybody that [she was] not going to follow down th[e] same path." N.T. 30; R.R 133a.

Kimberly Libengood, the manager of the Regis SmartStyle salon, testified on behalf of Bentley. She testified that Bentley was the "top stylist at the salon." N.T. 40; R.R. 143a. Libengood testified that Bentley was reliable, explaining:

> [s]he shows up when she doesn't need to…. She has filled in for me. You know, whenever the girls are struggling with something at work, she is always jumping in to help them. You know, her clients, whenever they are leaving, they love her to death. You know, she really works hard at everything she does. Everything that she does with color, cuts, everything, it's to the best of her ability. That's one of the things I love about her. Anything I ask [Bentley] to do, it's done. You know, there is [sic] no questions asked, she just does it. She really does love what she does.

N.T. 40-41; R.R. 143a-44a.

Finally, Ryan Marich, Bentley's boyfriend, testified. He met Bentley after her release from prison and, upon learning of her criminal history, found it difficult to reconcile with the individual he knows. Marich lives with Bentley, and

3

they have a three-month-old son. Marich described Bentley as a "wonderful mother." N.T. 44; R.R. 147a. He also stated that she has passion for her job, explaining that she

> take[s] time to go to the stores just to look at scissors for cutting hair. She's always talking about her work.

*Id.* Marich described Bentley as having a good reputation, noting that the "neighbors like her [and his] parents love her." N.T. 47; R.R. 150a.

At the close of the evidence, the Bureau requested a two-month active suspension of Bentley's license. Bentley objected to the proposal, arguing that in light of her changed life, the Bureau's proposed punishment was not warranted. She had paid for her crime with imprisonment. Depriving her of her ability to make a living was inappropriate because her crimes had nothing to do with her professional work.

In her proposed adjudication, the hearing examiner made 11 findings of fact relating to Bentley's mitigating evidence. She fully credited the testimony of Bentley's witnesses based on their demeanor. She noted that Bentley "cannot erase her past; all she can do is move forward, make positive choices and earn back her respect to her children, her family and society." Proposed Adjudication, 1/9/2017, at 12-13; R.R. 263a-64a. The hearing examiner concluded that Bentley deserved a second chance "[b]ased upon the genuine remorse shown by [Bentley] during her testimony, her maturity, her current support system, and the stability that [Bentley] now has with her work and family[.]" Proposed Adjudication, 1/9/2017, at 13; R.R. 264a.

The hearing examiner rejected the Department's recommendation for a two-month active suspension because it "would disrupt [Bentley's] stability and

4

thwart her ability to make a living and support her children." Proposed Adjudication, 1/9/2017, at 15; R.R. 266a. The hearing examiner recommended, instead, that Bentley's license be suspended, with the suspension stayed until the completion of her parole. *Id.* The hearing examiner believed that this sanction would "safeguard the public and help to ensure that [Bentley] remains committed to the lawful life she now leads." *Id.*

Thereafter, the Board issued a notice of its intent to review the hearing examiner's proposed adjudication and order. Neither party filed a brief. Following its deliberations, on May 4, 2017, the Board issued its final adjudication. Therein, it adopted all of the hearing examiner's proposed findings of fact with the exception of any of the 11 findings of fact on Bentley's mitigating evidence. The Board described Bentley's evidence of mitigation as "modest" but otherwise gave it no consideration. Board Adjudication, 5/4/2017, at 12-13; R.R. 287a-88a. The Board ordered a three-year suspension of Bentley's license effective June 5, 2017, with the opportunity to request a probationary reinstatement of her license on June 4, 2018. Bentley petitioned for this Court's review.[2]

On appeal, Bentley raises two issues. First, Bentley argues that the Board capriciously disregarded her mitigating evidence and the hearing examiner's findings thereon. Second, Bentley contends that the Board abused its discretion by suspending her license.[3] The three-year suspension was manifestly unreasonable,

---

[2] This Court's review of a licensing board's disciplinary sanction determines "whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions." *Goldberger v. State Board of Accountancy,* 833 A.2d 815, 817 n.1 (Pa. Cmwlth. 2003) (quoting *Slawek v. State Board of Medical Education and Licensure,* 586 A.2d 362, 365 (Pa. 1991)).

[3] A professional licensing board exercises "considerable discretion in policing its licensees." *Ake v. Bureau of Professional and Occupational Affairs, State Board of Accountancy*, 974 A.2d 514,

5

because the convictions bore no relationship to the practice of cosmetology and were remote in time.

In her first issue, Bentley asserts that the Board capriciously disregarded her mitigating evidence. It refused to adopt the hearing examiner's 11 findings of fact on mitigation even though his findings were not contradicted by any contrary evidence. Further, the Board offered no explanation for simply ignoring this important part of the record.

A capricious disregard of the evidence occurs "when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Station Square Gaming L.P. v. Pennsylvania Gaming Control Board*, 927 A.2d 232, 237 (Pa. 2007) (internal quotations omitted). Where there is strong critical evidence that contradicts contrary evidence, the adjudicator must provide an explanation as to how it made its determination. Stated otherwise, "[t]he ultimate question is whether an adjudicator has failed to give a proper explanation of overwhelming critical evidence." *Balshy v. Pennsylvania State Police*, 988 A.2d 813, 836 (Pa. Cmwlth. 2010) (quoting *Grenell v. State Civil Service Commission*, 923 A.2d 533, 538 (Pa. Cmwlth. 2007)). Bentley argues that her overwhelming mitigating evidence contradicted the Board's conclusion that Bentley's license should be suspended for three years.

---

519 (Pa. Cmwlth. 2009). The weight to be given to evidence of mitigating circumstances is a matter of agency discretion. *Burnworth v. State Board of Vehicle Manufacturers, Dealers and Salespersons*, 589 A.2d 294, 296 (Pa. Cmwlth. 1991). This Court, however, "is required to correct abuses of discretion in manner or degree of penalties imposed." *Ake*, 974 A.2d at 519 (internal quotation omitted); *see also Phan v. Bureau of Professional and Occupational Affairs, State Board of Cosmetology*, (Pa. Cmwlth., No. 1646 C.D. 2011, filed May 7, 2012), slip op. at 9 (unreported) (citing *Foose v. State Board of Vehicle Manufacturers, Dealers and Salespersons,* 578 A.2d 1355 (Pa. Cmwlth. 1990)).

The hearing examiner made the following specific findings on Bentley's mitigating evidence:

17. [Bentley] was nearing 19 years of age when she received her license to practice as a cosmetologist in PA. []

18. After receiving her license, [Bentley's] first job cutting hair was for Head Hunters in Hopewell, PA, where she worked for approximately one and a half years, until she became pregnant with her second child. []

\*\*\*

21. [Bentley's] last employment prior to her incarceration was at Katera's Kove in Beaver Falls, Pennsylvania, a dementia care facility. []

\*\*\*

28. Marich did not know [Bentley] prior to her release from prison; when he first learned about all of her criminal charges, he thought she was "messing with him" because she is the "rock" in their house. []

29. [Bentley] is well liked by her neighbors, and Marich's family all support her. []

30. Marich has no history of drug or alcohol abuse; they do not keep beer in their refrigerator. []

\*\*\*

35. Libengood has nothing but accolades to say about [Bentley's] work and her work ethic and authored a letter dated December 2, 2016 in support of [Bentley], which [Libengood] adopted at length during her testimony. []

36. [Bentley] takes full responsibility for what she has done, and demonstrated sincere remorse for her actions during her testimony. []

7

37.  [Bentley's] support system includes her mom, who is like her best friend now, Marich, her work and her work friends who all are aware of everything that she has been through. []

38.  [Bentley] is confident that she is a different person today than when she went to prison and that she will never engage in any like behavior again. []

39.  [Bentley] realizes it is a privilege to have a license to practice cosmetology in the Commonwealth and asks for a second chance to prove that she will not [go] down that same path. []

Proposed Adjudication, 1/9/2017, at 6-8; R.R. 257a-59a. None of these findings were adopted by the Board. Nor did the Board explain if it disagreed with these findings or why it did not adopt them.

A professional licensing board may use a hearing examiner to take evidence, but the ultimate fact finder is the board. *Pellizzeri v. Bureau of Professional and Occupational Affairs*, 856 A.2d 297, 301 (Pa. Cmwlth. 2004). An administrative agency is not required to adopt the hearing examiner's proposed findings of fact. *See Bucks County Public Intermediate Unit No. 22 v. Department of Education*, 529 A.2d 1201 (Pa. Cmwlth. 1987) (Secretary of Education not bound by findings of fact proposed by a hearing examiner). In short, the Board was not required to adopt all of the hearing examiner's proposed findings of fact.

However, in reaching its decision, the Board must review the entire record and consider all evidence, including evidence of mitigating circumstances. *See Markel v. Bureau of Professional and Occupational Affairs, State Board of Vehicle Manufacturers, Dealers and Salespersons*, (Pa. Cmwlth., No. 1800 C.D. 2013, filed May 8, 2014) (unreported). Here, the Board's adjudication recited that it "reviewed the entire record." Board Adjudication, 5/4/2017, at 2 n.2; R.R. 277a. However, this conclusory recital cannot be reconciled with the Board's adjudication,

8

which does not address the hearing examiner's extensive findings on and discussion of Bentley's mitigating evidence.

Before the Board can suspend a cosmetologist's license, it must give the person notice of the charges and the opportunity for a hearing. *See* Section 13(a) of the Beauty Culture Law, 63 P.S. §519(a).[4] The purpose of the hearing is to allow licensees an opportunity to "defend against the allegations in the Order to Show Cause or *to present evidence in mitigation of any penalty which may be imposed upon [them]* or any of [their] licenses, certifications, registrations, permits or other authorizations to practice [cosmetology]." Order to Show Cause, 2/29/2016, at 5-6; R.R. 6a-7a (emphasis added). Where a licensee presents mitigating evidence, the Board must consider that evidence. *See Nguyen v. Bureau of Professional and Occupational Affairs, State Board of Cosmetology*, 53 A.3d 100, 109 (Pa. Cmwlth. 2012) (when imposing discipline, Board must compare mitigating evidence of record to seriousness of misconduct). The procedures in the Beauty Culture Law apply even though the substantive basis for the Bureau's enforcement action was CHRIA.

The Board suspended Bentley's license under Section 9124(c)(1) of CHRIA, which states as follows:

---

[4] Act of May 3, 1933, P.L. 242, *as amended*, 63 P.S. §§507-527. Section 13(a) states, in relevant part:

> Before any licenses shall be suspended or revoked for any of the reasons contained in this section, the holder thereof shall have notice in writing of the charge or charges against him or her and shall, at a day specified in said notice, be given a public hearing before a duly authorized representative of the board with a full opportunity to produce testimony in his or her behalf and to confront the witnesses against him or her….

63 P.S. §519(a).

(c) State action authorized.--*Boards*, commissions or departments of the Commonwealth authorized to license, certify, register or permit the practice of trades, occupations or professions may refuse to grant or renew, or *may suspend or revoke any license*, certificate, registration or permit for the following causes:

(1) *Where the applicant has been convicted of a felony*.

18 Pa. C.S. §9124(c)(1) (emphasis added). CHRIA is a general statute that applies to every Pennsylvania licensing agency. The statute by which Bentley holds a license is the Beauty Culture Law, and it authorizes a license suspension only for misconduct related to the practice of cosmetology. Section 13(a) states, in relevant part, as follows:

(a) *The board shall have the power* to refuse, revoke, refuse to renew or suspend licenses, upon due hearing, *on proof of violation of any provisions of this act, or the rules and regulations established by the board under this act*, or for gross incompetency or dishonest or unethical practices, or for failing to submit to an inspection of a licensee's salon during the business hours of the salon ….

63 P.S. §519(a) (emphasis added). This has been construed to mean that a cosmetologist's "license can be revoked 'for gross incompetency or dishonest or unethical practices' but, like the [Barber License] Law,[5] does not include any reference to revocation for criminal convictions." *Kirkpatrick v. Bureau of Professional and Occupational Affairs, State Board of Barber Examiners,* 117 A.3d 1286, 1293 (Pa. Cmwlth. 2015) (internal quotation omitted).

The absence of criminal history restrictions in the Beauty Culture Law has allowed the Pennsylvania Department of Corrections, in conjunction with the

---

[5] Act of June 19, 2931, P.L. 589, *as amended*, 63 P.S. §§551-567.

10

Board, to offer a cosmetology program to eligible inmates. Upon successful completion of this program, the inmates are eligible for state licensure. *See* Department of Corrections' Inmate Grooming and Barber/Cosmetology Programs Procedures Manual, Policy Number DC-ADM 807, Section 2(A)(3) (effective July 15, 2016).[6]

CHRIA is a general law that authorizes, but does not require, an agency to suspend a license upon the licensee's felony conviction.[7] CHRIA does not provide standards for the exercise of the agency's discretion under Section 9124(c)(1). By contrast, the specific, and more relevant statute, is the Beauty Culture Law, and it does not authorize any discipline for criminal convictions unrelated to the practice of the profession. This makes a licensee's evidence of mitigating circumstances critical where presented.

---

[6] It states:

> The barber/cosmetology programs are registered programs. Students who successfully complete the programs are eligible for state licensure in three categories: barber, barber-manager, and cosmetology. The barber/cosmetology programs provide vocational skills as part of an overall goal of inmates returning to the community as employable, law-abiding citizens.

Department of Corrections' Inmate Grooming and Barber/Cosmetology Programs Procedures Manual, Policy Number DC-ADM 807, Section 2(A)(3).

[7] The Board's regulation authorizes it to suspend Bentley's license for a violation of the Controlled Substance, Drug, Device and Cosmetic Act (Drug Act), Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§780-101 - 780-144. That regulation states as follows:

> The license of a licensee who has pled guilty or nolo contendere to, or has been convicted of, a felony under [the Drug Act], or a similar State or Federal law, shall be subject to suspension or revocation under section 13 of the act (63 P. S. § 519).

49 Pa. Code §7.98. The Board did not cite the above-quoted regulation in either its Order to Show Cause or its adjudication. The sole legal basis for the Board's Order to Show Cause was Section 9124(c)(1) of CHRIA.

11

Here, the Board did not take any steps to sanction Bentley immediately upon her conviction. Instead, it waited for over a year after her release from prison to take any action, from which it had the discretion to forbear. The Board's capricious disregard of Bentley's mitigation evidence constitutes a violation of its responsibility to review, with care, such evidence.

Accordingly, we vacate the Board's adjudication and remand this matter to the Board to consider Bentley's evidence of mitigation.[8]

_____
MARY HANNAH LEAVITT, President Judge

---

[8] In light of this Court's disposition, we need not address Bentley's second issue, *i.e.*, that the Board abused its discretion by actively suspending her license because her conviction bore no relationship to the practice of cosmetology and she had reformed her life. As noted above, the Beauty Culture Law does not authorize discipline for criminal convictions unrelated to the profession. Thus, in exercising its discretion under Section 9124(c)(1) of CHRIA, the Board should have related its sanction to the regulation of the cosmetology profession in a specific, not conclusory, fashion. The Board was not created to replicate the work of those engaged in criminal law enforcement.

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shawneen N. Bentley,                    :
                    Petitioner            :
                                :
             v.                          :  No. 648 C.D. 2017
                                :
Bureau of Professional and              :
Occupational Affairs, State             :
Board of Cosmetology,                   :
                    Respondent          :

# **O R D E R**

AND NOW, this 28th day of February, 2018, the May 4, 2017, order of the Bureau of Professional and Occupational Affairs, State Board of Cosmetology (Board) is VACATED and this case is REMANDED to the Board for further proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge