IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sean J. Bertram,                     :
            Petitioner         :
                            :
        v.                   :   No. 12 C.D. 2018
                            :   Argued: December 13, 2018
Unemployment Compensation Board  :
of Review,                    :
            Respondent     :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT            FILED: March 22, 2019

       Sean J. Bertram (Claimant) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) denying his claim for benefits under Section 402(e) of the Unemployment Compensation Law (Law), 43 P.S. §802(e).[1]  The Board affirmed the Referee's factual finding that Claimant was dismissed for calling his employer's general sales manager a liar on January 23, 2017.  Claimant contends that he was dismissed on January 20, 2017, three days before this meeting with the general sales manager, and that the Board capriciously disregarded all the evidence in the record to support that fact.  An ex-employee, Claimant observes, has no duty to be polite to his former supervisor.

       Claimant began working full-time for Tom Hesser Chevrolet (Employer) on September 16, 1993, and his last day of work was January 19, 2017.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e), which states, in relevant part, that "[a]n employe shall be ineligible for compensation for any week ... [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work...."

Employer Questionnaire, Certified Record (C.R.___) Item No. 2, at 1. Claimant filed a claim for unemployment compensation benefits.

In its Unemployment Compensation (UC) Questionnaire, Employer stated that it dismissed Claimant because of "unsatisfactory work performance," which it described as "average only 5 cars a month last year," and added that it had "proof of lack of sales." C.R. Item No. 2, at 1. Employer also stated that Claimant had a "lack of respect for managers and other employees" and "refused to follow processes and procedures." *Id.* Employer's UC Questionnaire did not mention "insubordination" or assert that Claimant had ever engaged in name-calling. In a subsequent oral interview, Employer stated, for the first time, that Claimant called the general sales manager a liar. The UC Service Center found that Claimant was insubordinate because he called the general sales manager a liar.[2] C.R. Item No. 4, at 1. This willful misconduct disqualified Claimant under Section 402(e) of the Law. *Id.* Claimant appealed, stating:

> At no time in my employment was I formally reprimanded or disciplined for insubordination or any other infractions. It is my belief that the company used "insubordination" as an excuse to terminate existing employees due to declining sales dealership wide.

C.R. Item No. 5, at 4. The Referee conducted a hearing on April 27, 2017.

At the hearing, Employer presented the testimony of John Katsaros, the General Sales Manager, who stated he began working for Employer on January 4, 2017. Katsaros testified that he fired Claimant on January 23, 2017, for repeated acts of insubordination during the month of January.

---

[2] The record of oral interview does not identify the name of the person who spoke on behalf of Employer.

Katsaros cited the example of January 20, 2017, when one of Claimant's customers arrived to pick up his vehicle but Claimant was not there to help him. Katsaros also complained that Claimant did not comply with the policies requiring a salesperson to accompany a customer on a test drive and enter every customer's personal information into an online database. Claimant did not submit a business plan for increasing his sales performance as requested by Katsaros. Finally, Claimant did not always introduce his customers to Katsaros as directed by Katsaros.

When Claimant reported to work on Monday, January 23, 2017, Katsaros called Claimant into his office. According to Katsaros, Claimant raised his voice and called Katsaros a "liar." Notes of Testimony, 4/27/2017, at 11 (N.T. __). Katsaros stated that because his door was open, other employees and a customer in the vicinity of his office could overhear this exchange.

On cross-examination, Katsaros acknowledged that he announced the dismissal of two employees during a sales meeting on January 20, 2017. However, he did not acknowledge that he also announced Claimant's dismissal at that meeting.

Claimant testified and disputed each of Katsaros' claims of insubordination. Claimant stated that he was scheduled to be off work on January 20, 2017, and the customer who showed up did not have an appointment. The matter was handled by another employee after speaking by phone with Claimant. Claimant testified that he submitted a sales generation plan to Katsaros on January 9, 2017, which document was admitted into evidence. He explained that he tried to introduce every customer to Katsaros, but Katsaros was not always available. Claimant denied ever allowing a customer to test drive a vehicle without the presence of Claimant, and he stated that he always entered customer information into Employer's database.

3

Claimant testified that in his 23 years with Employer, he followed all policies and procedures.

Claimant testified that his co-worker, Keri Malone, was present at a meeting of the sales team on Friday, January 20, 2017, at which Katsaros announced his plan to fire Claimant. Malone relayed this information to Claimant over the weekend. When Claimant arrived at the dealership on Monday morning, his files were gone from his office, which "meant that [he] was out of the picture" and that he "was going to be terminated."[3] N.T. 28. Claimant acknowledged being upset during his meeting with Katsaros but did not recall calling him a liar. Claimant testified that Katsaros' office door was closed and "[a]t no time did I raise my voice, or at any other time refuse to follow any of his instructions, or any of the rules of [Employer]." N.T. 30.

Keri Malone testified on Claimant's behalf. She stated that Claimant was a helpful and hardworking colleague, followed Employer's rules and rarely took days off. Malone acknowledged that Katsaros had asked the sales personnel to introduce customers to him; however, Katsaros was often in meetings or could not be found. Malone was present at the dealership on January 20, 2017, when Claimant's customer arrived to pick up his vehicle. The customer did not have an appointment and was not upset that Claimant was not present. Malone testified that later that day, at a meeting of the sales team, Katsaros announced the dismissal of two sales employees and Claimant. Malone testified that Katsaros fired Claimant and other salespeople because of declining sales at the company.

The Referee made the following findings of fact:

---

[3] Katsaros acknowledged removing the files from Claimant's desk on Friday, January 20, 2017.

4

1. The claimant last worked as a full-time salesperson for Tom Hesser Chevrolet/BMW from September 16, 1993, with the last day worked of January 19, 2017.

2. The claimant was in charge of the employer's courtesy delivery program of vehicles.

3. On Friday, January 20, 2017, the claimant was not scheduled to work.

4. On Saturday, January 21, 2017, the claimant called off from work.

5. On January 21, 2017, a customer arrived at the dealership questioning about the delivery of his van.[4]

6. On January 23, 2017, the employer met with the claimant, questioning the claimant about the customer [arriving] on January 21, 2017 to pick up his van.

7. On January 23, 2017, in the meeting, the claimant called the general sales manager a liar multiple times.

8. On January 23, 2017, the employer discharged the claimant for his behavior towards the general sales manager on that date.

Referee Decision, 5/1/2017, at 1-2.

The Referee concluded that Claimant committed disqualifying willful misconduct under Section 402(e) of the Law by calling Katsaros a "liar." Claimant appealed to the Board, contesting the Referee's findings of fact.[5] He also contended that the Referee failed to consider Keri Malone's testimony and the other evidence that Claimant was actually discharged on January 20, 2017, before his meeting with Katsaros.

The Board adopted the Referee's findings and conclusions and affirmed his decision without any discussion. Claimant petitioned for this Court's review.

---

[4] The testimony at the hearing indicates that the customer arrived on Friday, January 20, 2017.

[5] Specifically, Claimant challenged findings of fact numbers 7 and 8.

On appeal,[6] Claimant argues that the Board capriciously disregarded relevant evidence. He emphasizes that the Board improperly ignored the testimony of his co-worker, Keri Malone, who testified that Katsaros announced Claimant's discharge on January 20, 2017. Claimant argues that because he was discharged on January 20, 2017, his conduct at his exit interview with Katsaros is irrelevant. Claimant was no longer an employee when the meeting began. Claimant contends that he was discharged for "unsatisfactory work performance," as Employer stated in its UC Questionnaire, and poor sales performance does not constitute willful misconduct. Claimant requests this Court to reverse the Board.

We begin with a review of what constitutes capricious disregard of evidence. We have explained that it "occurs where the fact finder willfully and deliberately disregards competent and relevant evidence that one of ordinary intelligence could not possibly have avoided in reaching a result." *Wise v. Unemployment Compensation Board of Review*, 111 A.3d 1256, 1262 (Pa. Cmwlth. 2015). More specifically, a capricious disregard of evidence occurs "where the factfinder has refused to resolve conflicts in the evidence, has not made essential credibility determinations or has completely ignored overwhelming evidence without comment." *Id*. at 1263. It is the responsibility of the factfinder to resolve the conflicts in the testimony and explain why it has accepted, or rejected, each piece of relevant evidence. *Id.* The Pennsylvania Supreme Court has explained that review for capricious disregard of competent evidence is an "appropriate component of appellate consideration in every case in which such question is properly brought

---

[6] Our review determines whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. *Seton Company v. Unemployment Compensation Board of Review*, 663 A.2d 296, 298 n.2 (Pa. Cmwlth. 1995).

before the court." *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002).

With the above-cited principles in mind, we consider whether the Board capriciously disregarded competent and relevant evidence in this case and whether the Board erred by adopting the Referee's decision *in toto* without comment. It appears that the Referee's factual findings are based upon Katsaros' testimony, but this testimony was contradicted by other testimony and by documentary evidence.

To begin, Katsaros' testimony contained inconsistencies on when he decided to fire Claimant. At the hearing, he acknowledged that he announced the dismissal of two people during the sales meeting on Friday, January 20, 2017, but he did not agree that he also announced Claimant's termination. Katsaros was not consistent on this point, as was demonstrated in his responses to the Referee:

> [Counsel]: And the reason for his termination was what?
>
> [Katsaros]: Because of that insubordination.
>
> [Referee]: Was the final event, Mr. Katsaros on the 23rd? Did – strike that. On January 23rd, 2017 did you call him – ask for [Claimant] to speak to you, or call a meeting, sir?
>
> [Katsaros]: Yes. Oh I asked him, when he showed up that Monday, I asked him to come see me.
>
> [Referee]: *And what was the original intent to speak to [Claimant] on that day?*
>
> [Katsaros]: *That I was going to let him go.*

N.T. 9 (emphasis added). The Referee continued with this line of questioning:

> [Referee]: Right. Was your intent – again, back to my question, was your intent to speak to [Claimant] upon his arrival at work on the 23rd, sir?
>
> [Katsaros]: Yes.

7

> [Referee]:    Okay. So no matter what happened in that meeting, [Claimant] was going to be terminated, correct, sir?
>
> [Katsaros]:  *I don't think so*, actually, because it just escalated, when he came in.
>
> [Referee]:    *And what was the reason or reasons you were going to terminate* [*Claimant*] *upon his arrival on the 23rd then, sir*?
>
> [Katsaros]:  *Well, constant insubordination, before that*.

*Id.* at 10 (emphasis added).

By contrast, Malone's testimony was clear that Katsaros announced Claimant's dismissal at the sales meeting on January 20, 2017. Malone testified that she relayed this information to Claimant before he returned to work on Monday, January 23, 2017. Nevertheless, the Referee made no comment about Malone's highly relevant testimony, and the Board affirmed the Referee's decision without explanation.

The Board argues that the Referee's silence on Malone's testimony is explained, and excused, by "implicit" credibility determinations. Board Brief at 9. The Board argues that this Court must infer from silence that the Referee "implicitly" rejected Malone's testimony and implicitly accepted Katsaros' testimony on the circumstances of Claimant's discharge. In support, it points to a paragraph in the Referee's decision that reads as follows:

> Both the claimant and the employer appeared at the unemployment compensation hearing to present testimony and evidence on the issues under appeal. The above findings represent the competent evidence and credibility determinations made by the Referee in rendering the following decision.

Referee Decision at 2. We reject the Board's argument.

8

First, the above-quoted boilerplate paragraph in the Referee's determination is not dispositive of whether the Referee capriciously disregarded record evidence. This paragraph is generic, not specific to any of the evidence in this record. Simply, it is not a substitute for express credibility determinations, and it does not discharge the Board's responsibility to consider and weigh the relevant evidence in a case.

Second, it is not the responsibility of the reviewing court to divine the reason for the factfinder's silence. Here, the highly relevant testimony of a disinterested third party did not elicit a single comment from the factfinder. As we have held, capricious disregard of evidence occurs where the factfinder "has completely ignored overwhelming evidence without comment." *Wise*, 111 A.3d at 1263.

Third, implicit credibility determinations do not resolve the conflicts between the testimonial and documentary evidence. One document in evidence is Claimant's business plan, which Katsaros asserted was never done. Another document in evidence is Employer's UC Questionnaire that identified January 19, 2017, as Claimant's last day of work, not January 23, 2017. Most importantly, Employer's UC Questionnaire specifically stated that Claimant was discharged for "unsatisfactory work performance," which Employer defined as "lack of sales." C.R. Item 2, at 1. The questionnaire said nothing about name-calling or even "insubordination."

We conclude that the Board has capriciously disregarded relevant evidence. It is as if Claimant did not have a *de novo* hearing. The Referee simply repeated, with virtually no discussion, the findings of the UC Service Center. The

9

Referee did not address Claimant's contention that he was not fired for his conduct on January 23, 2017, but on January 20, 2017, because of poor sales at the dealership.

The Referee did not resolve conflicts between the testimony of the three witnesses with express credibility determinations. The Referee ignored, without comment, Malone's testimony as well as the uncontradicted testimony that Claimant's files were gone from his office when he appeared at work on Monday, January 23, 2017. The Referee made no comment on Claimant's business plan or on Employer's UC Questionnaire, which stated that Claimant was dismissed for selling only five cars a month.

Where "there is strong critical evidence that contradicts contrary evidence, the adjudicator must provide an explanation as to how it made its determination." *Bentley v. Bureau of Professional and Occupational Affairs, State Board of Cosmetology*, 179 A.3d 1196, 1200 (Pa. Cmwlth. 2018). The relevant and critical evidence disregarded by the Referee includes Claimant's business plan; the removal of Claimant's files from his office before he reported to work on January 23, 2017; Malone's testimony; and the statements in Employer's UC Questionnaire. The Board must resolve the conflicts in the record evidence in order for meaningful appellate review to take place.

For these reasons, the Board's adjudication is vacated, and this matter is remanded to the Board to issue a new adjudication in accordance with our instructions herein.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sean J. Bertram,               :
          Petitioner     :
                       :
         v.            :   No. 12 C.D. 2018
                       :
Unemployment Compensation Board   :
of Review,              :
          Respondent   :

# **O R D E R**

AND NOW, this 22nd day of March, 2019, it is ORDERED that the Unemployment Compensation Board of Review's adjudication in the above-captioned matter dated December 8, 2017, is VACATED, and this matter is REMANDED for issuance of an adjudication in accordance with the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sean J. Bertram,                  :
                                        :
                 Petitioner    :
                                          :
                   v.              :   No. 12 C.D. 2018
                                          :   Argued: December 13, 2018
Unemployment Compensation     :
Board of Review,               :
                                          :
                 Respondent : 

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                     HONORABLE PATRICIA A. McCULLOUGH, Judge
                     HONORABLE MICHAEL H. WOJCIK, Judge

DISSENTING OPINION
BY JUDGE WOJCIK                              FILED: March 22, 2019


          Respectfully, I dissent. The Majority concludes that the Unemployment Compensation Board of Review (Board) capriciously disregarded critical evidence, namely, Keri Malone's testimony, then holds that the "*Board must resolve the conflicts that emerged from the testimonial and documentary evidence . . . and explain why it accepts or rejects each piece of relevant evidence*." Majority op. at 9. Respectfully, I disagree with both propositions, as neither is consistent with the controlling statute or precedent.

          While I agree that, generally, more detailed findings and discussion by the referee or the Board would be helpful, the findings made below are adequate to conduct meaningful appellate review, and there is nothing of record that would

justify reversal. *See* Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704. The Majority appears to suggest that the referee failed to issue a reasoned decision because he did not explicitly address Sean J. Bertram's (Claimant) conflicting evidence. This is of no consequence in an unemployment compensation case, because the General Assembly has not imposed this requirement as it has in workers' compensation law.

Here, our analysis is informed by the unemployment compensation (UC) regulations, which, in pertinent part, provide:

> The [referee] shall affirm, modify or reverse the decision of the Department as shall appear just and proper from the evidence submitted. The decision shall be rendered promptly after the conclusion of the hearing and shall set forth the following:
>
> (1) The names and addresses of parties involved, appeal number and claimant's social security number.
>
> (2) A history of the case, including the date of application for benefits, claim week ending dates, date of appeal and identity of appellant.
>
> (3) The date and nature of the determination (decision) being appealed.
>
> (4) Findings of fact.
>
> (5) Reasons for the decision.
>
> (6) Conclusions of law.
>
> (7) The order.

34 Pa. Code §101.88. The regulations impose identical requirements for decisions by the Board. 34 Pa. Code §101.109.

Nothing in the unemployment regulations requires a referee or the Board to render a "reasoned" decision that explicitly resolves all conflicting evidence. Thus, our role on appeal is to apply the regulations and applicable precedent to the decision of the referee and Board. The referee's decision explains that his findings of fact are based on the testimony that he credited, and specifically, the *unrebutted testimony that Claimant called Employer's General Sales Manager, John Katsaros, a liar multiple times*. Referee's decision p.2.

Although the General Assembly amended the Workers' Compensation Act in 1993,[1] it has not similarly modified the Unemployment Compensation Law.[2] There is no statutory requirement that a referee, or the Board, must render a reasoned decision. Respectfully, this Court should not impose such a requirement by judicial fiat, as such action would usurp the authority of the General Assembly.

Neither *Bentley v. Bureau of Professional and Occupational Affairs, State Board of Cosmetology*, 179 A.3d 1196 (Pa. Cmwlth. 2018), nor *Wise v. Unemployment Compensation Board of Review*, 111 A.3d 1256 (Pa. Cmwlth. 2015),

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708. As amended, Section 422 of the Act requires that a workers' compensation judge (WCJ) issue a "reasoned decision, containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The adjudicator shall specify the evidence upon which the adjudicator relies in conformity with this section. The adjudication shall provide the basis for meaningful appellate review." 77 P.S. §834.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§751-918.10. The UC regulations appear to be consistent with the informal nature of proceedings before the referee, where the referee acts as hearing officer for the ultimate factfinder, which only rarely assesses the testimony of live witnesses. The less detailed requirements also are consistent with the nature of the conflicts to be resolved in unemployment cases, which typically are less complex and involve fewer witnesses. In such cases, it is quite easy to identify the credited testimony from the findings of fact. See Majority op. at 8 (implicit credibility determinations will suffice only where there can be no doubt).

supports the Majority's conclusion that the Board capriciously disregarded evidence in this case. *Bentley* is distinguishable from this matter. In *Bentley*, the hearing examiner's proposed adjudication included forty-two findings of fact, eleven of which related to the licensee's mitigating evidence. The hearing examiner credited the mitigating evidence and recommended that the licensee's license suspension be stayed until the completion of her parole. The board adopted all of the hearing examiner's proposed findings of fact, *except all eleven findings* related to the mitigating evidence, and ordered a three-year license suspension. On appeal, the licensee asserted that the Board capriciously disregarded her mitigating evidence, and this Court agreed.

In *Wise*, we stated that "[d]isturbing an agency's adjudication for a capricious disregard of evidence is appropriate only where the factfinder has *refused* to resolve conflicts in the evidence, has not made essential credibility determinations or has *completely ignored overwhelming evidence* without comment." 111 A.3d at 1262 (emphasis added) (citing *Hinkle v. City of Philadelphia*, 881 A.2d 22, 27 (Pa. Cmwlth. 2005)).

In contrast to *Bentley*, in this case the Board did not cherry-pick from the referee's eight findings of fact; it adopted the referee's decision in its entirety. The referee's decision explains that the findings are based on the testimony credited by the referee, and specifically, on the *unrebutted testimony that Claimant called Katsaros a liar multiple times*. Referee's decision p .2. Moreover, Malone's testimony does not "directly contradict[] Katsaros' account." Majority op. at 6, 8. To the contrary, Malone was not present during the meeting at which, the Board found, Claimant called Katsaros a liar. Because Malone *offered no relevant*

*testimony on the critical issue* of what transpired during that meeting,[3] the Board did not refuse to resolve conflicting testimony or ignore overwhelming evidence.

We have repeatedly stated that it is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made. *Sipps v. Unemployment Compensation Board of Review*, 181 A.2d 479, 484 (Pa. Cmwlth. 2018); *Kelly v. Unemployment Compensation Board of Review*, 172 A.2d 718, 725 (Pa. Cmwlth. 2017); *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). Further, we have consistently observed that, while the Board must make crucial findings on the essential issues, "[the Board] is not required to address specifically each bit of evidence offered." *Panella v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 351 C.D. 2013, filed August 29, 2013), slip op. at 4 (citation and quotation omitted).[4] *See also Kunselman v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 444 C.D. 2012, filed February 7, 2013), slip op. at 3 n.2 (same); and *Kozlina-Peretic v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1088 C.D. 2008, filed December 23, 2008), slip op. at 3 (same).

Claimant also asserts that the referee ignored substantial evidence that Katsaros intended to terminate Claimant's employment. Whether Katsaros ultimately would have done so is of no moment, where the evidence credited by the Board supports the finding that Claimant was discharged for willful misconduct.

---

[3] I would not characterize Malone as a "disinterested" third party. Majority op. at 8. Katsaros had just fired three of her coworkers. Malone was concerned enough to call Claimant before he returned to work, something her employer would not likely condone.

[4] See Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a) ("Parties may . . . cite an unreported panel decision of this court issued after January 15, 2008, for its persuasive value, but not as binding precedent.").

In sum, the record does not demonstrate that the Board capriciously disregarded competent evidence, and I believe the Majority's holding would rewrite the Unemployment Compensation Law to require a reasoned decision, usurping the legislative authority of the General Assembly. Accordingly, I would affirm the decision below.

_____
MICHAEL H. WOJCIK, Judge