IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rothrock Motor Sales, Inc.,        :
                     Petitioner       :
                                   :
       v.                          : No. 1546 C.D. 2019
                                   : ARGUED: December 8, 2020
Department of Labor and Industry,    :
Office of Unemployment               :
Compensation Tax Services,         :
                     Respondent     :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                   FILED: April 27, 2021

       Rothrock Motor Sales, Inc. (Rothrock) petitions this Court for review of the October 4, 2019 Final Order of the Unemployment Compensation (UC) Tax Review Office of the Pennsylvania Department of Labor and Industry (Department), which denied Rothrock's appeal seeking recalculation of the UC contribution tax rate assigned by the Department's Office of Unemployment Compensation Tax Services (OUCTS). The Tax Review Office held that because Rothrock failed to comply with the Department's wage reporting requirements, OUCTS correctly assigned Rothrock a standard tax rate under Section 301 of the Unemployment Compensation Law (Law).[1] After careful consideration, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 781.

## I. Background and Procedural History

Pursuant to Section 301(a)(1) of the Law, an employer's tax contribution is calculated by multiplying the employer's taxable wages paid during a fiscal year by the tax rate assigned by the Department. 43 P.S. § 781(a)(1). Taxable wages are determined by wage reports submitted by employers to verify their employee wages paid during the fiscal year. Section 304 of the Law, 43 P.S. § 784; 34 Pa. Code § 63.52. The Department's regulations require that wage reports be filed through the UC Management System (UCMS), a Department-run electronic filing system. 34 Pa. Code § 63.52(e). The filing date of a report is the date of receipt by UCMS. *Id.* § 63.52(f). Payments are to be made concurrently with each report. Section 305 of the Law, 43 P.S. § 785. An employer's tax contributions are held in a reserve account established and maintained by the Department. Section 302 of the Law, 43 P.S. § 782.[2]

An employer's tax rate is calculated based on "employer experience," or its history and regularity of filing reports and paying tax contributions. Employers with high employer experience are eligible for a reduced tax rate; employers with less experience, or employers that fail to either timely file reports or pay tax contributions, are assigned a standard tax rate. *See generally* Section 301.1 of the Law, 43 P.S. § 781.1.[3]

Employers that qualify for an adjusted tax rate under Section 301.1 of the Law are further categorized into Group 1, 2, or 3, with Group 3 having the most experience. *Id.* § 781.1(b)(1). An employer retains its group designation once classified under Section 301.1(b)(1); however, it must still meet the requirements of

---

[2] Added by the Act of May 26, 1949, P.L. 1854.

[3] Added by the Act of December 17, 1959, P.L. 1893.

that group to qualify for an adjusted tax rate. *Id.* A Group 3 employer must make tax contributions for at least one quarter in each of the four fiscal years prior to the tax rate's effective date. *Id.* Simply put, high employer experience, accrued by timely reporting and accurate payments, results in a lower tax rate in the next fiscal year, while insufficient experience results in the standard tax rate.

Before the present controversy, Rothrock qualified for an adjusted tax rate in Group 3 and had timely filed its wage reports and tax payments. On December 9, 2016, OUCTS posted a notice to Rothrock's UCMS account, notifying Rothrock that the wage report for the third quarter of 2016 was missing. Reproduced Record (R.R.) at 73a. OUCTS posted another correspondence on March 10, 2017, stating that the reports for the third and fourth quarters of 2016 were missing. *Id.* at 74a. OUCTS posted additional correspondences to Rothrock's UCMS account on July 12, 2017, September 11, 2017, and December 8, 2017. *Id.* at 75a-77a. Each correspondence was accompanied by an email to Rothrock, which stated that "a new correspondence was available" and directed Rothrock to log into its UCMS account to view the correspondence. *Id.* at 6a-9a.

As of December 8, 2017, none of Rothrock's wage reports for the fiscal year 2016-2017 had been uploaded to its UCMS account.[4] On December 31, 2017, OUCTS assigned Rothrock a tax rate of 10.4536%, including a 3% penalty, due to its failure to timely file wage reports for the 2016-2017 fiscal year. *Id.* at 62a.

Upon realization of the increased tax rate, Rothrock filed the missing wage reports in February 2018 and appealed the assigned tax rate. *Id.* at 64a-65a. On

---

[4] A fiscal year under the Law begins July 1st and ends on the following June 30th. *See* Section 4(z.3) of the Law, 43 P.S. § 753(z.3) ("'Computation Date' means June thirtieth of the year preceding the effective date of new rates of contribution, which date shall be January first of the succeeding year."); *id.* § 781.1(b)(1) (calculating adjusted tax rate on the preceding "twelve-month periods ending on the computation date for the year").

3

April 5, 2018, OUCTS lifted the 3% penalty and reduced Rothrock's tax rate to the standard rate of 7.42916%. *Id.* at 63a; *see* 43 P.S. § 781(a)(2) (allowing the filing of delinquent reports within 30 days to remove the 3% penalty).

On May 8, 2018, Rothrock appealed OUCTS's assignment of the standard tax rate to the Tax Review Office, seeking its previous experience-based adjusted tax rate. In its appeal, Rothrock claimed that the employee responsible for filing "began having trouble with [UCMS]," and consequently, the reports apparently "did not go through." R.R. at 50a. Once it became aware of the missing reports, Rothrock "refiled" them. *Id.* at 51a. Further, Rothrock asserted that it did not knowingly or deliberately fail to file the reports and was therefore entitled to an adjusted tax rate. *Id.*

On June 1, 2018, the Tax Review Office sent a letter to both OUCTS and Rothrock requesting that OUCTS provide all documents that formed the basis of the tax rate assigned to Rothrock, and directing Rothrock to submit any objections in writing as well as any additional documentation. *Id.* at 80a. The June 1, 2018 letter also stated, "In the event a decision cannot be made based solely upon the paper record, further instructions will be issued to inform the [p]arties of the course the proceedings will take in this appeal." *Id.* at 81a. Rothrock did not submit any objections or additional documentary evidence. *Id.* at 56a-57a.

On October 4, 2019, the Tax Review Office entered a Final Order denying Rothrock's appeal based on Rothrock's failure to timely file its wage reports. *Id.* at 88a-89a. In its Order, the Tax Review Office noted that in order to qualify for the Group 3 adjusted tax rate, Rothrock was required to "have paid contribution in at least one quarter in each of the four fiscal years immediately preceding calendar year 2018." *Id.* at 88a. Without the requisite wage reports, the Department could not

4

determine the contributions required to calculate the 2018 tax rate. *Id.* Further, the Tax Review Office stated that reports after September 15th are precluded from the calculation of the tax rate for the next year. *Id.* at 87a; 43 P.S. § 781.1(c)(1)(i) (calculating the tax rate based on "contributions with respect to the period ending on the computation date and paid on or before September [15th] immediately following such computation date"). In rendering its decision, the Tax Review Office relied on OUCTS's documentary evidence showing that Rothrock did not file the required wage reports until February 2018 and Rothrock's admitted tardiness in its May 8, 2018 appeal. R.R. at 88a. Accordingly, the Tax Review Office determined that OUCTS properly assigned Rothrock the standard tax rate under Section 301 of the Law. *Id.* at 89a. This appeal followed.

## II.    Issues

On appeal,[5] Rothrock asserts that: (1) the Department's denial of Rothrock's appeal without an evidentiary hearing violated due process; (2) the Department capriciously disregarded evidence of Rothrock's timely filing of its wage reports; and (3) the Department was equitably estopped from applying the standard tax rate because it accepted Rothrock's contributions without notifying Rothrock that it did not receive the required wage reports.

---

[5] This Court's review in UC tax rate appeals "is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law or whether necessary findings of fact are supported by substantial evidence." *Hosp. Mgmt. Corp. v. Dep't of Lab. & Indus., Off. Of Unemployment Comp. Tax Servs.*, 171 A.3d 936, 938 n.5 (Pa. Cmwlth. 2017). "As to questions of law, our scope of review is plenary, and our standard of review is *de novo*." *Id.*

5

## III.     Analysis

### A.  Due Process

The constitutional right to due process "emanates from a number of provisions of the Declaration of Rights, particularly Article I, Sections 1, 9, and 11 of the Pennsylvania Constitution." *Lawson v. Pa. Dep't of Pub. Welfare*, 744 A.2d 804, 806 (Pa. Cmwlth. 2000) (citing Pa. Const. art. I, §§ 1, 9, 11). Agency adjudications are subject to the procedural safeguards of due process. *Id.* The essential elements of due process require adequate notice, an opportunity to be heard, and a chance to defend oneself in front of a fair and impartial tribunal with jurisdiction. *Id.*

Rothrock argues that it was denied due process when the Department denied its appeal without an evidentiary hearing. Section 504 of the Administrative Agency Law provides that "[n]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." 2 Pa. C.S. § 504. However, the opportunity to be heard does not necessitate an evidentiary hearing in every case, as this Court has long held:

> [W]here no factual issues are in dispute, no evidentiary hearing is required under 2 Pa. C.S. § 504. *Snyder v. [Dep't] of [Env't] [Res.]*, 588 A.2d 1001 (Pa. Cmwlth. 1991), [*appeal dismissed as improvidently granted*, 632 A.2d 308 (Pa. 1993)]; *Massari v. Foster*, 569 A.2d 399 (Pa. Cmwlth. 1990); *Mellinger v. [Dep't] of [Cmty.] [Affs.]*, 533 A.2d 1119 (Pa. Cmwlth. 1987). Where there are no disputed facts, the motion proceedings, including briefs and arguments by both parties, provide ample opportunity for the parties to be heard and the Administrative Agency Law requires no more.

*Indep. Blue Cross v. Pa. Ins. Dep't*, 802 A.2d 715, 720 (Pa. Cmwlth. 2002) (quoting *United Healthcare Benefits Tr. v. Ins. Comm'r of Pa.*, 620 A.2d 81, 83 (Pa. Cmwlth. 1993)).

Here, in its June 1, 2018 letter, the Department notified Rothrock of the procedures for the tax rate appeal and advised Rothrock that it could supplement the record. R.R. at 80a-81a. The Department notified Rothrock that the record before the Tax Review Office would consist of the OUCTS documents "together with all issues set forth in writing by [Rothrock]." *Id.* at 80a. The Department also informed Rothrock that it could submit "any objections or additions to the copies provided by OUCTS" within three weeks of Rothrock's receipt of the June 1, 2018 letter. *Id.* The Department then explained that the Tax Review Office would certify the record after the three-week period expired. *Id.*

Significantly, the Department also informed Rothrock that an evidentiary hearing would *only be held if a decision could not be made based on the existing record*:

> In the event a decision cannot be made based solely on the paper record, further instructions will be issued to inform the [p]arties of the course the proceedings will take in this appeal. (These instructions may include, for example, activities intended to facilitate a hearing at which each [p]arty may offer testimony and exhibits.)

*Id.* As the Tax Review Office concluded:

> There is no actual dispute as to the facts in this matter. OUCTS indicates [Rothrock] did not file quarterly reports for fiscal year 2017 until February 2018 (OUCTS correspondence covering authenticated documentary copies dated June 20, 2018 [(R.R. at 54a-55a)]). [Rothrock] admits to such lateness in its wage reporting, as quoted in relevant part above. (Appeal to UC Tax

7

> Review Office, under May 8, 2018 postmark [(R.R. at 50a-51a)].)

*Id.* at 80a.    Rothrock was clearly on notice of the nature of the proceedings, its opportunity to supplement the record, and its ability to object to OUCTS's evidence if it believed that factual issues existed.  Rothrock failed to avail itself of these procedural safeguards. Therefore, we conclude that the Tax Review Office did not err in denying Rothrock's appeal without an evidentiary hearing.

Rothrock next asserts that OUCTS failed to provide proper notice of Rothrock's reporting failures.[6]  Rothrock's Br. at 26-27.  Rothrock claims that the generic emails with the subject matter "Correspondence Type – Statement of Account," merely stating that "new correspondence" was "available," were insufficient to notify Rothrock that its wage reports were not timely filed.  *Id.* at 26. The Department contends that the correspondences in question were accessible through the UCMS message system and that the emails sufficiently notified Rothrock of the notices.  Dep't's Br. at 13-14. Furthermore, OUCTS sent the emails to the email address Rothrock designated in UCMS "as the address at which [it] would prefer to have notices sent." *Id.* at 14.  According to the Department, "[i]t was solely Rothrock's responsibility to check [its] UC account once [it] received an email notifying [it] that [it] had a notice waiting." *Id.*

We conclude that the record contains ample evidence that Rothrock was properly notified that it had not timely filed its wage reports. "Notice is deemed adequate when it is reasonably calculated to inform a party of the pending action and provides the party an opportunity to present objections to the action." *Wilkes ex rel. Mason v. Phoenix Home Life Mut. Ins. Co.*, 902 A.2d 366, 383 (Pa. 2006). Electronic

---

[6] While Rothrock characterizes this argument as a "capricious disregard" of evidence, it is in actuality a due process issue.

notice has been held to be sufficient for due process. *See, e.g.*, *Germantown Cab Co. v. Phila. Parking Auth.*, 171 A.3d 315, 332 (Pa. Cmwlth. 2017) (holding statutory provisions for notice by email and posting to Philadelphia Parking Authority's website "sufficient to satisfy procedural due process standards"), *rev'd and remanded on other grounds*, 206 A.3d 1030 (Pa. 2019).

Section 304(a)(3) of the Law expressly provides:

> The [D]epartment will mail notice of an assessment to the employer's last known address *or electronically transmit notice of an assessment to the employer's electronic mail address, if the employer has designated such an address. . . . Notice of an assessment by electronic transmission is complete when notice is sent to the employer's electronic mail address*.

43 P.S. §784(a)(3) (emphasis added). Here, OUCTS sent multiple electronic notices to Rothrock's designated email address, informing Rothrock that the Department had posted "correspondence" to Rothrock's UCMS account. R.R. at 6a-9a. While the emails themselves did not specify the content of the notices posted, we conclude that the emails were adequate to notify Rothrock that it needed to check its account for important information from the Department. Rothrock's decision to simply ignore the emails was not result in inadequate notice as a violation of due process.

### B. Capricious Disregard

"A capricious disregard of evidence occurs where the [factfinder] willfully and deliberately disregards competent and relevant evidence that one of ordinary intelligence could not possibly have avoided in reaching a result." *Wise v. Unemployment Comp. Bd. of Rev.*, 111 A.3d 1256, 1262 (Pa. Cmwlth. 2015). However, "where there is substantial evidence to support the agency's factual findings and those findings support the legal conclusions, 'it should remain a rare

instance in which an appellate court would disturb an adjudication based upon capricious disregard.'" *Id.* (quoting *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 487 n.14 (Pa. 2002)). As such, "[d]isturbing an agency's adjudication for a capricious disregard of evidence is appropriate only where the factfinder has refused to resolve conflicts in the evidence, has not made essential credibility determinations or has completely ignored overwhelming evidence without comment." *Id.* at 1263.

According to Rothrock, the Tax Review Office capriciously disregarded competent evidence when it "mischaracterized" its May 8, 2018 appeal as an "admission" of its untimely wage report filings.[7] Rothrock's Br. at 27. Rothrock relies on *Bertram v. Unemployment Compensation Board of Review*, 206 A.3d 79, 84-85 (Pa. Cmwlth. 2019), arguing that the Tax Review Office's finding of an admission was "generic[ and] not specific to any of the evidence in this record. Simply, [it was] not a substitute for express credibility determinations, and [did] not discharge the [Tax Review Office's] responsibility to consider and weigh the relevant evidence in [the] case." Rothrock's Br. at 28-29.

We conclude that Rothrock's reliance on *Bertram* is misplaced. In *Bertram*, this Court held that the Unemployment Compensation Board of Review (Board) capriciously disregarded competent evidence when it ignored testimonial and documentary evidence without comment and failed to resolve any disputes in the evidence. *Bertram*, 206 A.3d at 85. Furthermore, the mere repetition of the Referee's findings of fact "[was] as if [Bertram] did not have a *de novo* hearing

---

[7] Rothrock also argues that the Tax Review Office capriciously disregarded competent evidence demonstrating that its wage reports were timely filed but technical errors with UCMS caused upload failures. Rothrock's Br. at 28. However, Rothrock raises this claim for the first time in its brief to this Court. As discussed earlier, Rothrock had the opportunity to raise this issue before the Tax Review Office but failed to do so. Therefore, this claim is waived.

[before the Board]." *Id.* Thus, the Board's generic adoption of the record without comment or resolving conflicts constituted capricious disregard. *Id.* at 84-85.

*Bertram* is inapplicable here because there was no testimony given for a credibility determination; Rothrock failed to introduce evidence contrary to the documents provided by OUCTS; and the Tax Review Office Final Order gave a specific reason to finding the admission:

> [Rothrock] represents "the person who had been filing the quarterly reports began having difficulties with [UCMS]," and explains the individual "filed the quarterly reports and the taxes due in a timely manner . . . but for some reason the reports did not go through." [Rothrock] also represents that it "immediately refiled the reports in question" after contacting the Pennsylvania UC Employer Contact Center and speaking to an employee who "thoroughly explained . . . the problem on the account."

R.R. at 85a (quoting the May 8, 2018 appeal letter). The Tax Review Office characterized Rothrock's statements in its appeal as "admissions." *See id.* at 88a ("[Rothrock] admits to such lateness in its wage reporting, as quoted in relevant part above."). This is not a generic finding not specific to any of the evidence in the record, as Rothrock claims; instead, it is supported by substantial evidence. *See Wise*, 111 A.3d at 1262 ("where there is substantial evidence to support the agency's factual findings and those findings support the legal conclusions, 'it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard.'" (quoting *Wintermyer*, 812 A.2d at 487 n.14)). The Tax Review Office specifically relied on the appeal letter to conclude that Rothrock admitted to filing the wage reports late. As discussed earlier, Rothrock failed to raise any objections or submit additional evidence to the Tax Review Office; accordingly,

11

there was no favorable evidence to Rothrock for the Tax Review Office to capriciously disregard.

## C. Equitable Estoppel

Finally, Rothrock argues that the Department was equitably estopped from assigning the standard tax rate because Rothrock reasonably relied on UCMS when it submitted its wage reports without issue before the 2016-2017 fiscal year.[8]

The doctrine of equitable estoppel recognizes that an informal promise implied by one's words, deeds, or representations, which leads another to justifiably rely to his own detriment, may be enforced in equity. *Belleville v. David Cutler Grp., Inc.*, 118 A.3d 1184, 1199 (Pa. Cmwlth. 2015). To apply the doctrine of equitable estoppel to the action of a Commonwealth agency, the agency must have: (1) intentionally or negligently misrepresented material facts; (2) known, or had reason to know, that the opposing party would justifiably rely on the misrepresentation; and (3) induced the opposing party to act to his or her detriment in reliance on the misrepresented facts. *Foster v. Westmoreland Cas. Co.*, 604 A.2d 1131, 1134 (Pa. Cmwlth. 1992). The party asserting estoppel must establish these elements by clear, precise, and unequivocal evidence. *Id.*

Here, the Department took no action, either intentionally or negligently, to induce Rothrock into believing that its wage reports were timely filed. On the contrary, UCMS sent several email messages notifying Rothrock that its wage reports were missing.

---

[8] In support of its estoppel argument, Rothrock again raises the issue of lack of notice related to OUCTS's email messages, Rothrock's Br. at 29-30, but for the reasons discussed above, we reject this claim. Similarly, Rothrock asserts that it "reasonably relied to its detriment upon OUCTS'[s] negligently developed or maintained online reporting system." *Id.* at 32. However, there is no evidence of record indicating that there were technical problems with UCMS that prevented Rothrock from timely filing its wage reports; therefore, we also reject this claim.

Because there is no evidence that the Department made any misrepresentations to Rothrock regarding the status of its wage reports, we conclude that the Department was not estopped from assigning the standard tax rate under Section 301(a)(1) of the Law.

## IV.    Conclusion

After review of the record, we conclude that there is no factual dispute that would have entitled Rothrock to an evidentiary hearing; therefore, Rothrock was not denied due process. We also conclude that the Tax Review Office did not capriciously disregard any evidence because Rothrock never objected in writing or submitted additional evidence to the Tax Review Office. Finally, Rothrock's equitable estoppel claim also fails because the Department took no actions to induce Rothrock into believing its wage reports were timely filed. For these reasons, we affirm the Department's Final Order.

_____
ELLEN CEISLER, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rothrock Motor Sales, Inc.,         :
            Petitioner       :
                          :
      v.               :  No. 1546 C.D. 2019
                          :
Department of Labor and Industry,  :
Office of Unemployment        :
Compensation Tax Services,      :
            Respondent   :

# **O R D E R**

AND NOW, this 27th day of April, 2021, the Final Order of the Unemployment Compensation Tax Review Office, dated October 4, 2019, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge