IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sean J. Bertram,                          :
                          Petitioner      :
                                          :
            v.                            :      No. 726 C.D. 2019
                                          :      Submitted: January 29, 2021
Unemployment Compensation                 :
Board of Review,                          :
                          Respondent      :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                                  FILED: March 29, 2021

           Sean J. Bertram (Claimant) petitions for review of an adjudication of
the Unemployment Compensation Board of Review (Board) denying his claim for
unemployment compensation benefits under Section 402(e) of the Unemployment
Compensation Law (Law), 43 P.S. §802(e).[1]  Claimant argues that the Board's
findings of fact are not supported by substantial evidence and its legal conclusion is
erroneous.  Upon review, we reverse.

           This matter initially came before the Court in an appeal from an
adjudication of the Board, dated December 8, 2017, that affirmed a Referee's
determination that Claimant committed disqualifying willful misconduct under
Section 402(e) of the Law by calling his employer's general sales manager a liar in

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e),
which states, in relevant part, that "[a]n employe shall be ineligible for compensation for any week
… [i]n which his unemployment is due to his discharge … from work for willful misconduct
connected with his work…."

a meeting on January 23, 2017. In doing so, the Board adopted the Referee's findings of fact and conclusions of law, without discussion. Concluding that the Board capriciously disregarded relevant evidence, a divided panel of this Court vacated the Board's adjudication and remanded the matter to the Board with instructions to resolve the conflicts in the testimonial and documentary evidence, make express credibility determinations and issue a new adjudication. *See Bertram v. Unemployment Compensation Board of Review*, 206 A.3d 79, 84-85 (Pa. Cmwlth. 2019) (*Bertram I*). Following remand, the Board issued a May 16, 2019, adjudication that again affirmed the Referee's decision and denied Claimant benefits for the stated reason that he committed disqualifying willful misconduct. Claimant petitioned for this Court's review.

Claimant worked as a full-time salesperson for Tom Hesser Chevrolet/BMW (Employer) from September 16, 1993, until his last day of work on January 19, 2017. Certified Record (C.R.) Item No. 17; Board Adjudication, 5/16/2019, Finding of Fact 1. After his separation from employment, Claimant applied for unemployment compensation benefits. The Unemployment Compensation (UC) Service Center determined that Claimant was ineligible for unemployment compensation benefits because he was discharged for insubordination, which constituted disqualifying willful misconduct under Section 402(e) of the Law. C.R. Item No. 6, at 1. Claimant appealed, and a referee held a hearing on April 27, 2017.

In *Bertram I*, we summarized the testimony presented at the hearing as follows:

> Employer presented the testimony of John Katsaros, the General Sales Manager, who stated he began working for Employer on January 4, 2017. Katsaros testified that he fired Claimant on

January 23, 2017, for repeated acts of insubordination during the month of January.

Katsaros cited the example of January 20, 2017, when one of Claimant's customers arrived to pick up his vehicle but Claimant was not there to help him. Katsaros also complained that Claimant did not comply with the policies requiring a salesperson to accompany a customer on a test drive and enter every customer's personal information into an online database. Claimant did not submit a business plan for increasing his sales performance as requested by Katsaros. Finally, Claimant did not always introduce his customers to Katsaros as directed by Katsaros.

When Claimant reported to work on Monday, January 23, 2017, Katsaros called Claimant into his office. According to Katsaros, Claimant raised his voice and called Katsaros a "liar." Notes of Testimony, 4/27/2017, at 11 (N.T. __). Katsaros stated that because his door was open, other employees and a customer in the vicinity of his office could overhear this exchange.

On cross-examination, Katsaros acknowledged that he announced the dismissal of two employees during a sales meeting on January 20, 2017. However, he did not acknowledge that he also announced Claimant's dismissal at that meeting.

Claimant testified and disputed each of Katsaros' claims of insubordination. Claimant stated that he was scheduled to be off work on January 20, 2017, and the customer who showed up did not have an appointment. The matter was handled by another employee after speaking by phone with Claimant. Claimant testified that he submitted a sales generation plan to Katsaros on January 9, 2017, which document was admitted into evidence. He explained that he tried to introduce every customer to Katsaros, but Katsaros was not always available. Claimant denied ever allowing a customer to test drive a vehicle without the presence of Claimant, and he stated that he always entered customer information into Employer's database. Claimant testified that in his 23 years with Employer, he followed all policies and procedures.

3

Claimant testified that his co-worker, Keri Malone, was present at a meeting of the sales team on Friday, January 20, 2017, at which Katsaros announced his plan to fire Claimant. Malone relayed this information to Claimant over the weekend. When Claimant arrived at the dealership on Monday morning, his files were gone from his office, which "meant that [he] was out of the picture" and that he "was going to be terminated."[1][2] N.T. 28. Claimant acknowledged being upset during his meeting with Katsaros but did not recall calling him a liar. Claimant testified that Katsaros' office door was closed and "[a]t no time did I raise my voice, or at any other time refuse to follow any of his instructions, or any of the rules of [Employer]." N.T. 30.

Keri Malone testified on Claimant's behalf. She stated that Claimant was a helpful and hardworking colleague, followed Employer's rules and rarely took days off. Malone acknowledged that Katsaros had asked the sales personnel to introduce customers to him; however, Katsaros was often in meetings or could not be found. Malone was present at the dealership on January 20, 2017, when Claimant's customer arrived to pick up his vehicle. The customer did not have an appointment and was not upset that Claimant was not present. Malone testified that later that day, at a meeting of the sales team, Katsaros announced the dismissal of two sales employees and Claimant. Malone testified that Katsaros fired Claimant and other salespeople because of declining sales at the company.

*Bertram I*, 206 A.3d at 81-82 (footnote omitted).

After considering the evidence presented, the Referee concluded that Claimant committed disqualifying willful misconduct under Section 402(e) of the Law by calling Katsaros a liar on January 23, 2017. C.R. Item No. 12; Referee Decision, 5/1/2017, at 2. Claimant appealed to the Board, which adopted the

---

[2] Katsaros acknowledged removing a single file from Claimant's desk on January 20, 2017, and speculated that other employees may have removed other files thereafter, though he did not clarify whether he instructed them to do so. N.T. 18.

4

Referee's findings of fact and conclusions of law and affirmed the Referee's decision without discussion. C.R. Item No. 15; Board Adjudication, 12/8/2017, at 1.

Claimant appealed the Board's December 8, 2017, adjudication to this Court. He argued that the Board capriciously disregarded relevant evidence that showed that he was discharged on January 20, 2017, *i.e.*, before his January 23, 2017, meeting with Katsaros. Specifically, the Board made no mention of Malone's testimony that she heard Katsaros announce Claimant's discharge on January 20, 2017, before the meeting of January 23, 2017, between Claimant and Katsaros. Claimant asserted that his behavior at the January 23 meeting had no bearing on his discharge and that he was terminated for unsatisfactory sales performance, not willful misconduct. A divided panel of this Court vacated the Board's adjudication and remanded the matter to the Board with instructions to resolve the conflicts in all the testimonial and documentary evidence, make explicit credibility determinations, and issue a new adjudication. *See Bertram I*, 206 A.3d at 84-85.

Following remand, the Board issued its May 16, 2019, adjudication, in which it made the following findings of fact:

> 1. The claimant was last employed by Tom Hesser Chevrolet/BMW as a full-time salesperson from September 16, 1993, until his last day worked on January 19, 2017.
>
> 2. The claimant was in charge of the employer's courtesy delivery program of vehicles.
>
> 3. The claimant was off for his regularly scheduled day off on January 19, 2017, and called out sick on January 20, 2017.[3]

---

[3] The testimony at the hearing indicates that Claimant had a scheduled day off on Friday, January 20, 2017, and that Claimant's customer arrived on that date. Claimant was then out sick the following day, Saturday, January 21, 2017. N.T. 25-26. The Board's misstatements of these dates in Findings of Fact 3, 4, and 10 are not material to our disposition of the case.

5

4. The sales manager discharged certain employees on January 20, 2017, but he did not inform anyone on January 19 or 20, 2017, that he was going to discharge the claimant.

5. Someone at the dealership took the courtesy delivery files off of the claimant's desk before Monday, January 23, 2017, but it was not the general sales manager.

6. On January 20, 2017, a customer came into the dealership to pick up a vehicle, but he did not have an appointment to do so.

7. On January 23, 2017, the general sales manager met with the claimant and asked where he was on January 20, 2017, and told him about the customer who had come in.

8. The claimant called the general sales manager a liar, multiple times, in a very loud voice, and said the customer was not there.

9. This took place in the general sales manager's office, located in the middle of the showroom, with the door open, and there were four sales people within ten feet of the general sales manager's office at that time.

10. Prior to January 20, 2017, there had been instances where the claimant was not complying with directives given to him by the general sales manager and the general sales manager was considering discharging the claimant for repeated insubordination; however, the general sales manager decided to give the claimant a second chance and was going to tell him so on January 20, 2017, but the claimant was out sick.

11. The employer discharged the claimant on January 23, 2017, for disrespecting the general sales manager by calling him a liar, multiple times on that day.

C.R. Item No. 17; Board Adjudication, 5/16/2019, at 1-2.

After reciting the above findings, the Board explained its rationale for again affirming the Referee's decision. The Board acknowledged that Katsaros vacillated in his testimony about whether he intended to discharge Claimant as a

6

result of his alleged acts of insubordination during the month of January 2017. It nevertheless credited Katsaros' testimony that he discharged Claimant because Claimant called Katsaros a liar multiple times on January 23, 2017, which the Board concluded was the act that precipitated Claimant's discharge. The Board found that certain alleged acts of insubordination by Claimant that were raised by Katsaros, such as not preparing a business plan, were irrelevant because they were not the reasons for Claimant's discharge.

The Board expressly resolved the conflicts between the testimony of Katsaros, Malone, and Claimant in favor of Employer. Accordingly, the Board rejected Claimant's contention that he was discharged prior to January 23, 2017.

Specifically, the Board credited Katsaros' testimony that he removed one file from Claimant's office but not the remaining files. The Board rejected Claimant's argument that Katsaros' testimony should not be credited because it was contradicted by Employer's UC Questionnaire, which stated that Claimant was discharged for "unsatisfactory work performance." C.R. Item No. 17; Board Adjudication, 5/16/2019, at 3. The Board pointed out that Employer's UC Questionnaire also listed "[l]ack of respect for managers and other employees" as a reason for Claimant's discharge. *Id.* The Board credited Katsaros' testimony that Claimant raised his voice when calling Katsaros a liar, and that Katsaros' office door was open when the incident took place with four other salespeople nearby. The Board concluded that Claimant's act of calling Katsaros a liar without justifiable provocation constituted willful misconduct under Section 402(e) of the Law, such that benefits must be denied. Claimant then petitioned this Court for review.[4]

---

[4] In reviewing an adjudication of the Board, we must determine whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether **(Footnote continued on next page…)**

7

On appeal, Claimant contends that the Board again erred. He asserts that the Board capriciously disregarded competent evidence and that the Board's findings are not supported by substantial evidence.[5] Claimant also appears to take issue with the Board's credibility determinations and argues that the Board should have credited Malone's testimony where it conflicted with Katsaros' testimony. He further asserts that the evidence in the record, including Employer's UC Questionnaire, shows that Claimant was discharged before he committed the alleged misconduct on January 23, 2017. Claimant contends that his defense of his conduct at the January 23, 2017, meeting did not constitute willful misconduct.

We begin with a review of the applicable legal standards. "A capricious disregard of evidence occurs where the fact finder willfully and deliberately disregards competent and relevant evidence that one of ordinary intelligence could not possibly have avoided in reaching a result." *Wise v. Unemployment Compensation Board of Review*, 111 A.3d 1256, 1262 (Pa. Cmwlth. 2015) (citing *Spencer v. City of Reading Charter Board*, 97 A.3d 834, 842 (Pa. Cmwlth. 2014)). The Pennsylvania Supreme Court has explained that a review for capricious disregard of competent evidence is "an appropriate component of appellate consideration in every case in which such question is properly brought before the

---

constitutional rights were violated. *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth.), *appeal denied*, 97 A.3d 746 (Pa. 2014). "Substantial evidence is such relevant evidence which a reasonable mind would accept as adequate to support a conclusion." *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). We view the record in the light most favorable to the party that prevailed before the Board and afford that party the benefit of all reasonable inferences that can be drawn from the evidence to determine if substantial evidence exists. *Big Mountain Imaging v. Unemployment Compensation Board of Review*, 48 A.3d 492, 494-95 (Pa. Cmwlth. 2012).

[5] We have summarized Claimant's arguments on appeal for brevity and clarity. Claimant specifically challenges Findings of Fact 4 and 8-11, which form the basis for the Board's conclusion that Claimant committed willful misconduct.

8

court." *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002). "Disturbing an agency's adjudication for a capricious disregard of evidence is appropriate only where the factfinder has refused to resolve conflicts in the evidence, has not made essential credibility determinations, or has completely ignored overwhelming evidence without comment." *Wise*, 111 A.3d at 1263 (citing *Hinkle v. City of Philadelphia*, 881 A.2d 22, 27 (Pa. Cmwlth. 2005)). In *Wise*, this Court explained:

> "Capricious disregard" then is just another name for the agency abusing its discretion and is an error of law when the agency fails to give an indication that it has examined countervailing substantive testimony that had to be considered at arriving at its decision.
>
> The capricious disregard standard then is nothing more than a shorthand way of referring to an amalgam of existing overlapping legal and constitutional standards mentioned above that safeguard against arbitrariness by state and local administrative agencies by requiring a meaningful explanation of why the losing party's overwhelming evidence was not accepted.

*Wise*, 111 A.3d at 1263 (quoting *Hinkle*, 881 A.2d at 27 (footnote omitted)). "An appellate court conducting a review for capricious disregard of material, competent evidence may not reweigh the evidence or make credibility determinations." *Wise*, 111 A.3d at 1263 (citing *Spencer*, 97 A.3d at 842).

Applying the above principles to the instant matter, we conclude that the Board's remand adjudication did not capriciously disregard competent and relevant evidence. Following *Bertram I*, the Board addressed the conflicts in the testimony and documentary evidence and made express credibility determinations; this time it did not ignore evidence without comment. Specifically, and as we directed in *Bertram I*, the Board discussed and resolved the conflicts among (1)

9

Katsaros', Claimant's, and Malone's testimony concerning the timing and reason for Claimant's discharge, and (2) documentary evidence that conflicted with Katsaros' testimony, including the business plan Claimant prepared and Employer's UC Questionnaire. *See* C.R. Item No. 17; Board Adjudication, 5/16/2019, at 1-3; *see also Bertram I*, 206 A.3d at 85 (identifying these specific evidentiary conflicts for resolution). The Board explained that it credited Katsaros' testimony over that of Claimant and Malone to find that Employer discharged Claimant on January 23, 2017, because Claimant called Katsaros a liar during their meeting on that date. The Board points out that Employer listed "[l]ack of respect for managers and other employees" on its UC Questionnaire and also addressed that point in an oral interview by the UC Service Center. C.R. Item No. 17; Board Adjudication, 5/16/2019, at 3. The Board found that neither Claimant's business plan, admitted into evidence, nor the alleged acts of Claimant's insubordination during the month of January 2017, after Katsaros was hired as sales manager, were relevant. Accordingly, we will not disturb the Board's remand adjudication on grounds that it capriciously disregarded evidence. *See Hinkle*, 881 A.2d at 27.

We next turn to Claimant's challenges to the Board's specific factual findings. Claimant asserts that the Board's findings of fact are not supported by the record.

It is well-settled that the Board is the ultimate factfinder in unemployment compensation proceedings. *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1385 (Pa. 1985). The Board is empowered to resolve all conflicts in evidence, assess witness credibility, and weigh the evidence. *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). "It is irrelevant whether the record contains

10

evidence to support findings other than those made by the [Board]; the critical inquiry is whether there is evidence to support the findings actually" rendered by the Board. *Id.* Where substantial evidence supports the Board's findings, they are binding on appeal. *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013).

The employer bears the burden of proving willful misconduct. *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth 1999). This Court has defined willful misconduct as:

> (1) the wanton and willful disregard of the employer's interests; (2) the deliberate violation of [the employer's] rules; (3) the disregard of standards of behavior that an employer can rightfully expect from his employee; or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.

*Chapman v. Unemployment Compensation Board of Review*, 20 A.3d 603, 606-07 (Pa. Cmwlth. 2011) (citing *Guthrie*, 738 A.2d at 521). Whether a claimant's conduct constitutes willful misconduct is a question of law fully reviewable by this Court on appeal. *Temple University of the Commonwealth System of Higher Education v. Unemployment Compensation Board of Review*, 772 A.2d 416, 418 n.1 (Pa. 2001) (*Temple University*).

Once the employer has met its burden, "the burden of proof shifts to the employee to prove that [he] had good cause for [his] actions." *Chapman*, 20 A.3d at 607. Good cause is established where the employee demonstrates that his actions were "justified or reasonable under the circumstances." *Id.*

In this case, the Board found that Claimant called Katsaros a liar multiple times during their January 23, 2017, meeting and that this behavior was the

reason for Claimant's discharge. Claimant first challenges these findings by asserting that he was discharged before the January 23 meeting and, therefore, could not have committed willful misconduct at a time when he was no longer an employee. In so arguing, Claimant argues that Findings of Fact 4 (that Katsaros did not announce at the January 20 meeting that he was firing Claimant) and 11 (that he was fired on January 23, not earlier) are not supported by substantial evidence.

Although Claimant's and Malone's testimony supports the conclusion that Claimant was discharged on January 20, 2017, Katsaros' testimony supports Findings of Fact 4 and 11. Katsaros testified that he contemplated discharging Claimant before January 23, 2017, but ultimately decided not to do so. He testified that he would not have fired Claimant but for his behavior at the January 23 meeting. N.T. 17-18, 20. The Board expressly credited Katsaros' testimony on this point and declined to credit Claimant's and Malone's contrary testimony or the contrary statement on Employer's UC Questionnaire. Despite the conflicting evidence, Katsaros' testimony constitutes substantial evidence that supports Findings of Fact 4 and 11.

Alternatively, Claimant asserts that he did not engage in the alleged behavior, and that Findings of Fact 8 (Claimant called Katsaros a liar) and 9 (within hearing distance of four salespeople) are unsupported by substantial evidence. Claimant's testimony conflicts with Katsaros' on this point, and the Board resolved that conflict in favor of Employer. Claimant admitted that he "might have" called Katsaros a liar in the meeting because he was angry and upset, although he denied raising his voice, as Katsaros alleged. N.T. 28, 30. Regardless, Katsaros testified that Claimant did call him a liar and that Claimant did so loudly, with the office door open and within hearing distance of four salespeople, which testimony the Board

12

credited. N.T. 51-52. Thus, Katsaros' credited testimony supports Findings of Fact 8 and 9.

Claimant appears to challenge the Board's findings concerning the reason for his discharge, focusing on Findings of Fact 10 (Employer decided not to fire Claimant based on previous acts of insubordination and poor performance) and 11 (Employer discharged Claimant because he disrespected Katsaros on January 23). Once again, the record supports these findings based on the Board's credibility determinations. Katsaros testified that but for Claimant's actions during the meeting of January 23, 2017, he would not have fired Claimant at that time.

Claimant argues that other evidence, such as the testimony offered by Claimant or Malone, or Employer's UC Questionnaire, supports his contention that he was discharged for poor sales, not insubordination. However, it is irrelevant whether the record contains evidence to support an alternative factual finding. *See Ductmate Industries*, 949 A.2d at 342. Although there was considerable conflict in the testimony concerning each of the factual questions, the Board resolved each conflict in favor of Employer. Such is the Board's role. *Peak*, 501 A.2d at 1385. Claimant essentially asks this Court to accept his preferred version of the facts, which we cannot do. *Henderson*, 77 A.3d at 718. In short, Katsaros' credited testimony constitutes substantial evidence that supports the Board's findings.

Finally, accepting the Board's factual findings as supported by substantial evidence, we must consider whether Claimant's conduct meets the legal standard for willful misconduct, such that benefits must be denied under Section 402(e) of the Law. As the Board stated, Claimant's contentions essentially "boil[] down" to this question of law, which we may review on appeal. C.R. Item No. 17; Board Adjudication, 5/16/2019, at 3; *see Temple University*, 772 A.2d at 418 n.1.

13

Claimant argues that even if Employer's description of his behavior during the January 23 meeting is accurate, it was not disqualifying willful misconduct. Claimant asserts that there is a difference between calling someone a liar and stating that something is a falsehood. Claimant's Brief at 24-25.

It is well established that "[a]n employee's use of abusive … or offensive language with a superior is a form of insubordination that can constitute willful misconduct," but this conduct does not constitute disqualifying willful misconduct where the abusive or offensive language "was provoked or is *de minimis* in nature." *Brown v. Unemployment Compensation Board of Review*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012); *accord Costa v. Unemployment Compensation Board of Review*, 374 A.2d 1012, 1013 (Pa. Cmwlth. 1977). Where an employee's offensive and insubordinate words are provoked or *de minimis*, the employee will not be denied benefits under Section 402(e) of the Law. *Balaschak v. Unemployment Compensation Board of Review*, 395 A.2d 638, 640 (Pa. Cmwlth. 1978).

This Court's precedent has addressed whether a claimant who accuses a supervisor of dishonesty has committed willful misconduct. In *Luketic v. Unemployment Compensation Board of Review*, 386 A.2d 1045 (Pa. Cmwlth. 1978), the claimant was discharged because during a meeting with other employees, she accused the employer's officers of misleading employees about rumored layoffs. We opined that, despite her "bad attitude," the claimant's statements were reasonable under the circumstances, particularly because the employer had attempted to lay the claimant off two weeks earlier. *Id.* at 1048. We also observed that the claimant did not use vulgar or offensive language. *Id.* In reversing the Board's adjudication and concluding that the claimant was entitled to benefits, we stated: "Although the claimant's statements at the staff meeting may have appeared

14

of sufficient moment to the employer to require her discharge, we do not believe that the law requires us to reinforce that decision by denying her benefits under the [Law]." *Id.*

In *Dincher v. Unemployment Compensation Board of Review*, 502 A.2d 797 (Pa. Cmwlth. 1986), the claimant, without raising his voice or using offensive language, accused his supervisor of dishonesty by revoking permission for the claimant to take a day off work. Citing *Luketic*, we stated that such an accusation would be reasonable and not constitute willful misconduct, if it was true. *Dincher*, 502 A.2d at 800. We concluded that, although there may have been "wiser courses of action," the claimant's conduct was "not egregious such to bar [the] claimant [from benefits] under Section 402(e) of the [Law]." *Id.* at 799-800.

By contrast, in *Costa*, the claimant was discharged after he called his supervisor a liar in front of an entire office of other employees and "for no apparent reason[.]" 374 A.2d at 1013. We observed that the record contained no evidence that the claimant was provoked in any way. *Id.* We therefore concluded that his behavior constituted willful misconduct. *Id.*

Here, as found by the Board, Claimant called Katsaros a liar multiple times in a loud voice. The word "liar" could, in the abstract, be considered abusive or offensive. However, the record also shows that Claimant's statements were provoked. Specifically, Katsaros admitted that during the January 23 meeting, he told Claimant that Claimant's customer had arrived on January 20 and required service from another employee in Claimant's absence. N.T. 6-7, 9-11. Claimant testified that Katsaros claimed that the customer had an appointment and that Claimant had failed to adequately serve the customer. N.T. 28-29. Considering this testimony together with the Board's finding that the customer did not have an

15

appointment, Finding of Fact 6, it appears that Katsaros' accusation was, in significant part, untrue.

We hold that, in the face of such provocation, Claimant's act of calling Katsaros a liar, even if offensive and regrettable, did not rise to the level of willful misconduct such that he should be denied benefits under the Law. *Balaschak*, 395 A.2d at 640; *cf. Costa*, 374 A.2d at 1013 (holding that the same behavior, with no evidence of provocation, constitutes willful misconduct).

Because Claimant's behavior did not constitute willful misconduct as a matter of law, the Board erred in finding Claimant ineligible for benefits under Section 402(e) of the Law. Accordingly, we reverse the Board's order.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge McCullough dissents.

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sean J. Bertram,             :
                                :
           Petitioner    :
                                :
          v.             :    No. 726 C.D. 2019
                                :
Unemployment Compensation   :
Board of Review,            :
                                :
         Respondent :

## **O R D E R**

AND NOW, this 29th day of March, 2021, the Unemployment Compensation Board of Review's adjudication in the above-captioned matter, dated May 16, 2019, is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge Emerita