# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric C. Levengood,                          :
                            Petitioner      :
                                            :
        v.                                  :       No. 947 C.D. 2017
                                            :       ARGUED: April 10, 2018
Bureau of Professional and                  :
Occupational Affairs, State Board           :
of Vehicle Manufacturers, Dealers           :
and Salespersons,                           :
                            Respondent      :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                 **FILED: May 10, 2018**


Eric C. Levengood (Licensee) petitions for review of an order of the State Board of Vehicle Manufacturers, Dealers and Salespersons (Board) that levied a civil penalty of $10,000 against him and revoked his vehicle salesperson license, effective July 31, 2017, based on his conviction of felony offenses.[1] The Board acted pursuant to the following statutes:

> (1) Section 19(4) of the Board of Vehicles Act (Vehicles Act),[2] which permits revocation of a license based on conviction of crimes of moral turpitude;

---

[1] In July 2017, this Court granted Licensee's application for stay of the Board's order imposing the license revocation.

[2] Act of December 22, 1983, P.L. 306, *as amended*, 63 P.S. § 818.19(4).

(2) Section 5(b)(4) of the statute commonly referred to as the Licensing Boards and Commissions Law (Act 48),[3] which permits imposition of a civil penalty of no more than $10,000 per violation on any licensee who violates any provision of the applicable licensing act or board regulation; and

(3) Section 9124(c)(1) of the Criminal History Record Information Act (CHRIA),[4] which applies to every Pennsylvania licensing agency and authorizes but does not require an agency to refuse to grant or renew or suspend or revoke a license upon a licensee's felony conviction.

Licensee argues and, we agree, that the Board abused its discretion in revoking his license and imposing a civil penalty of $10,000 when such penalties are manifestly unreasonable under the circumstances.

The facts as found by the Board are as follows. Licensee holds a license to practice as a vehicle salesperson in the Commonwealth. Originally issued in March 2000 and current through May 2019, it "may be renewed, reactivated or reinstated thereafter upon the filing of the appropriate documentation and payment of the necessary fees." (Final Adjudication, Finding of Fact (F.F.) No. 2.) He has been in the business of selling cars on and off since 2000. (*Id*., No. 30.)

In September 2008, Licensee pled guilty to simple assault, rape by forcible compulsion, rape by threat of forcible compulsion, involuntary deviate sexual intercourse by forcible compulsion, involuntary deviate sexual intercourse by threat of forcible compulsion, burglary, intimidation of a victim or witness, terroristic threats, and false imprisonment. (*Id*., No. 9.) These convictions were the result of an incident in which he "unlawfully entered the home of his ex-girlfriend while she was at work, waited for her to return and then physically and sexually

---

[3] Act of July 2, 1993, P.L. 345, *as amended*, 63 P.S. § 2205(b)(4).
[4] 18 Pa. C.S. § 9124(c)(1).

2

assaulted her while her 5 year old son was in the home." (*Id.*, No. 11.) When these offenses occurred, he "had a drinking problem and sometimes took illegal drugs." (*Id.*, No. 14.) He was sentenced to five to ten years of imprisonment, a fine of $2,000, costs of $4,589.15, restitution of $727.57, no contact with the victim, and sex offender registration. (*Id.*, No. 10.)

In September 2009, Licensee also pled guilty to one count of aggravated assault resulting from an incident where he punched a corrections officer in the nose. (*Id.*, No. 17.) His sentence was as follows: (1) five years of probation, to run consecutively with the above sentence; (2) costs of $997.25; and (3) a fine of $500. (*Id.*, No. 16.) Consequently, Licensee served approximately five years in prison. (*Id.*, No. 18.) While he was incarcerated, he participated in all of the available programs, some mandatory and others elective, "including a sex offender program, drug and alcohol program, victim's awareness violence prevention program, and a celebrate recovery program." (*Id.*, No. 19.) He also began attending church. (*Id.*, No. 27.)

Released from prison in December 2012, Licensee went to work at his father's farm and chimney business in Williamsport for about a year before moving to Lebanon County where he also held various temporary jobs.[5] (*Id.*, No. 31.) He "remains on parole, after which he will be on probation for five years as a result of his aggravated assault offense while incarcerated." (*Id.*, No. 20.) He also has been making regular payments pursuant to a payment plan. (*Id.*, No. 21.) In addition, he married a woman he met after his release, bought a home, and started a family. (*Id.*, Nos. 23 and 24.) Having attributed his past criminal record to immaturity, hard

---

[5] The hearing examiner found that Licensee struggled for employment as a temporary worker in Lebanon County. (Proposed Adjudication, F.F. No. 43; Reproduced Record (R.R.) at 96a.)

3

partying, and alcohol, he no longer drinks alcohol or uses illegal drugs and has been actively attending church. (*Id.*, Nos. 25-27.)

In April 2015, Licensee filed an application to reactivate his salesperson license therein acknowledging his convictions and was reactivated in May. Subsequent to the Board's May 2015 reactivation, Licensee has been working "six days per week at Conrad's Old Mill Auto Sales where he is the day-to-day manager of the dealership, and his duties include purchasing and selling vehicles, interacting with customers, vendors and garages on a regular basis, and paying the bills." (*Id.*, No. 32.) Although his uncle attends auto auctions with him twice weekly, Licensee is the sole individual regularly present at the business other than occasional visits from his wife and a groundskeeper. (*Id.*, No. 35.)

In October 2015, the Board entered an eighteen-count order to show cause charging that Licensee was subject to disciplinary action based on his criminal convictions. (*Id.* at 1.) Following the appointment of a hearing examiner,[6] the Commonwealth's attorney presented its case via documentary evidence. Primarily in mitigation of the sanctions, Licensee testified on his own behalf, submitted some documentary evidence, and presented the testimony of his wife and uncle.

At the close of the evidence, the Commonwealth recommended an unspecified but substantial period of suspension.[7] Subsequently, the hearing examiner in her proposed adjudication sustained all eighteen counts and recommended that Licensee be assessed a $7,000 civil penalty. In addition, she

---

[6] An administrative agency may appoint a hearing examiner to take evidence and render a recommendation as to how to dispose of a matter. *Pellizzeri v. Bureau of Prof'l and Occupational Affairs*, 856 A.2d 297, 301 (Pa. Cmwlth. 2004).

[7] The Commonwealth also recommended that, prior to license reinstatement, Licensee at an additional hearing "further demonstrate his fitness and his compliance with his probationary parole and probationary terms before he would be allowed to practice." (Certified Record (C.R.), Item No. 6, February 11, 2016, Hearing, Notes of Testimony (N.T.) at 64.)

4

recommended that his license be indefinitely suspended for the remaining period of his parole and special probation, with the suspension immediately stayed in favor of probation subject to numerous terms and conditions. In weighing the severity of his crimes with public safety, she found sufficient evidence of rehabilitation to overcome the presumption that he lacked the good moral character required of a vehicle salesperson. In support, she considered the entirety of the evidence including:

> a) the criminal convictions at issue; b) the age of those convictions; c) the demeanor of all witnesses who testified; d) the fact that [Licensee's] sexual assaults were perpetrated in the context of a personal relationship, as opposed to a random act, making it unlikely that he will ever repeat this behavior; and, e) [Licensee's] credible testimony regarding the man he is today[.]

(Proposed Adjudication at 20-21; Reproduced Record (R.R.) at 107-08a.)

Moreover, in considering Licensee's positive rehabilitation and the fact that the criminal justice system appropriately dealt with his convictions and would continue to closely monitor him, the hearing examiner opined that an active suspension would hinder his existing obligation to remain current on his payment plan. Accordingly, she opined that the civil penalty of $7,000 was commensurate with the magnitude of his felonious acts and would serve as a deterrent to him and others. (*Id.* at 21-22; R.R. at 108-09a.)

Following the issuance of a notice of intent to review and deliberation, the Board issued a final adjudication therein departing from the hearing examiner's recommendations and, instead, imposing the aforementioned revocation and civil penalty. Specifically, concluding that the evidence was insufficient to demonstrate a reformation of Licensee's character, it determined: "A vehicle salesperson displaying this level of rage and violence toward anyone, let alone a woman and a

corrections officer, presents untold dangers to customers and their families on the premises of the dealership, especially when not responding as he demands." (Final Adjudication at 17.) Noting that Licensee was often the only individual present at the dealership on a daily basis, it expressed a concern that an individual with his demonstrated propensity for violence would have the opportunity to commit similar crimes. Further, it opined that he continued to minimize the nature of his disturbing conduct via his version of the events, emphasizing that it is at odds with the court documents and that he omitted his threats to the victim's five-year-old child. Licensee filed the instant petition for review.

A professional licensing board exercises "considerable discretion in policing its licensees." *Ake v. Bureau of Prof'l & Occupational Affairs, State Bd. of Accountancy*, 974 A.2d 514, 519 (Pa. Cmwlth. 2009). Our review of a licensing board's disciplinary sanction determines "whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties and functions." *Goldberger v. State Bd. of Accountancy*, 833 A.2d 815, 817 n.1 (Pa. Cmwlth. 2003) [quoting *Slawek v. State Bd. of Medical Educ. and Licensure*, 586 A.2d 362, 365 (Pa. 1991)]. In that regard, the weight to be given to evidence of mitigating circumstances is a matter of agency discretion. *Burnworth v. State Bd. of Vehicle Mfrs., Dealers and Salespersons*, 589 A.2d 294, 296 (Pa. Cmwlth. 1991). We are required "to correct abuses of discretion in the manner or degree of penalties imposed." *Ake*, 974 A.2d at 519 (internal quotation omitted). An agency's decision is arbitrary and capricious where "there is no rational connection between the facts found and the choices made." *Lehigh Valley Farmers v. Block*, 640 F. Supp. 1497 (E.D. Pa. 1986), *aff'd*, 829 F.2d 409 (3d Cir. 1987).

6

In the present case, Licensee acknowledges the Board's discretion, but argues that its imposition of the harshest sanction available, revocation of his license, was patently unreasonable in light of the mitigating evidence and the passage of time. In support, he observes that, "a state may regulate a business which affects the public health, safety and welfare," but that "it may not, through regulation, deprive an individual of his right to conduct a lawful business unless it can be shown that such deprivation is reasonably related to the state interest sought to be protected." *Sec'y of Rev. v. John's Vending Corp.*, 309 A.2d 358, 361 (Pa. 1973). In addition, he cites case law holding that the passage of time between a licensee's criminal convictions and license revocation warrant consideration. *See id.* (holding that, where a 50% shareholder with a twenty-year old conviction for possessing and selling alcohol and opium derivatives but who had held a wholesale cigarette license for twelve years without incident filed an application for a license, it was ludicrous to maintain that the prior acts provided any basis to evaluate his character and present ability to properly discharge his responsibilities) and *Ake* (holding that, where a licensee with a seven-year-old conviction in another state for criminal harassment filed an application to reactivate his CPA credentials in Pennsylvania, the licensing agency seeking to revoke his license based on that conviction had to consider the nature of his conduct and its remoteness in time).

Similarly, Licensee acknowledges that, in addressing the appropriateness of a civil penalty assessment, a court will not substitute its judgment for that of a board and will not disturb its determination if it reasonably fits the violation. *Eureka Stone Quarry, Inc. v. Dep't of Envtl. Prot.*, 957 A.2d 337 (Pa. Cmwlth. 2008). He nonetheless maintains that the Board abused its discretion in imposing a sanction of $10,000, where that civil penalty is not reasonable in relation

7

to the violation. In that regard, he notes the fines that the criminal court imposed for his convictions. (2007 Convictions: $525 and $2,000; 2009 Conviction: $500).

In determining whether the Board abused its discretion in the manner or degree of penalties imposed such that it should be corrected, we acknowledge that the agency head is not required to adopt the hearing examiner's proposed fact-findings and legal conclusions. *McDermond v. Foster*, 561 A.2d 70, 72 (Pa. Cmwlth. 1989). Nonetheless, we are troubled by how the Board reached and justified its draconian result. As an initial matter, even though the crimes at issue were serious, the Board's approach seemingly assumes bad moral character forever and no possibility for rehabilitation such that permanent revocation becomes the only possible result. Even Section 19(4) of the Vehicles Act contemplates a time period for crimes of moral turpitude providing a basis for disciplinary proceedings. In pertinent part, it provides:

> [T]he board shall have the power to formally reprimand, suspend or revoke any license or refuse to issue or renew any license of an applicant . . . if after due notice of and hearing, the person charged . . . is found guilty of committing or attempting to commit . . . any of the following acts:
>
> . . . .
>
> (4) Being a vehicle dealer or salesperson, having *within five years* prior to the application for or issuance of a license or while his current license is in force pleaded guilty, entered a plea of nolo contendere or been found guilty . . . of forgery, embezzlement, obtaining money under false pretense, extortion, conspiracy to defraud, bribery, odometer tampering or any other crime involving moral turpitude.

8

63 P.S. § 818.19(4) (emphasis added). Here, Licensee pled guilty to his crimes in 2008 and 2009 and applied for reactivation in 2015.[8] In any event, we find significant the respective courts' analysis regarding the passage of time set forth in *John's Vending Corp.* and *Ake*.

In addition, it is problematic that the crimes at issue were unrelated to Licensee's licensed conduct as a vehicle salesperson. For example, his convictions did not relate to the practice of selling vehicles, such as a fraud conviction. *See Bentley v. Bureau of Prof'l & Occupational Affairs, State Bd. of Cosmetology*, 179 A.3d 1196 (Pa. Cmwlth. 2018) (noting that the licensee's felony convictions[9] were totally unrelated to the licensed conduct of a cosmetologist, we concluded that the board erred in disregarding mitigating evidence and abused its discretion in suspending her license for three years based on those convictions and, therefore, vacated the adjudication and remanded the matter for consideration of the mitigating evidence).

Moreover, we are concerned that the agency imposed the highest possible penalties thereby depriving Licensee of his ability to earn his livelihood. As Licensee asserts, it is well established that an individual may not be deprived of

---

[8] Both the hearing examiner and the Board determined that because Licensee was convicted of crimes of moral turpitude while his license was in force, he was subject to disciplinary action under Section 19(4). Even though the application at issue was for reactivation and Licensee indicated thereon that he was not returning his current license because he no longer had his *expired* license, we agree. *See Garner v. Bureau of Prof'l and Occupational Affairs, State Bd. of Optometry*, 97 A.3d 437, 443 (Pa. Cmwlth. 2014), *appeal denied*, 112 A.3d 655 (Pa. 2015) (holding that, even though an optometrist's license was inactive at the time of the crimes for which the board sanctioned him, it retained jurisdiction to suspend his license since he maintained a property interest therein that he could revive at any time).

[9] These felony convictions included forgery; delivery or possession of controlled substances with intent to manufacture or deliver; aggravated assault; escape; and fleeing or attempting to elude a police officer. *Bentley*, 179 A.3d at 1198.

his right to conduct a lawful business unless it can be shown that such deprivation is reasonably related to the state interest sought to be protected. *John's Vending Corp.*, 309 A.2d at 361. As gleaned from the final adjudication, the state interest is the protection of the public when visiting the dealership and interacting with Licensee during time periods when he may be the lone employee on the premises. While the public's protection is of great importance,[10] the Board in its final adjudication did not make a rational connection between depriving Licensee of his license and public safety.[11] As noted, the crimes did not involve strangers thereby making repetition less likely.

Furthermore, we are troubled by the fact that two of the statutes that the Board relied upon to impose sanctions do not provide criteria for the exercise of the agency's discretion. Turning first to CHRIA, we have characterized it as a general law that lacks specific standards for the exercise of an agency's discretion under Section 9124(c) to refuse to grant or renew or suspend or revoke a license upon a licensee's felony conviction. *Bentley*, 179 A.3d at 1203.

Turning next to Section 5(b)(4) of Act 48, we observe that it similarly provides no criteria for the imposition of a civil penalty of not more than $10,000 per violation of the licensing act or applicable regulations. *See* 49 Pa. Code § 43b.9 ("Schedule of civil penalties – vehicle manufacturers, dealers and salespersons," enumerating multiple violations and corresponding civil penalties but not for Section 19(4) of the Vehicles Act). For no cognizable reason, the Board increased the

---

[10] *See Nicoletti v. State Bd. of Motor Vehicle Mfrs., Dealers and Salespersons*, 706 A.2d 891, 895 (Pa. Cmwlth. 1998) (holding that, licensure disciplinary action is remedial in nature and that the principle purpose of discipline is to protect the public).

[11] In our order granting Licensee's application for stay, we observed, *inter alia*, that he had been working without incident since the Board's 2015 reinstatement of his license. Accordingly, we concluded that the public interest would not be adversely affected by a stay.

hearing examiner's proposed civil penalty of $7,000 to the maximum penalty of $10,000.  While $3,000 may not seem like a lot, the effect of that increase is a highly subjective matter, especially considering the fact that Licensee already has sums due and owing as a result of his criminal cases.  In addition, the undisputed evidence reflects that he is making his living as a vehicle salesperson, with the goal of continuing to support his family and maintain a home.

Finally, although the Board attempts to minimize the fact that it granted Licensee's application for reactivation in 2015, its reactivation is significant in light of his responding "yes" to a query as to whether he had any criminal convictions, including felonies.  (Certified Record (C.R.), February 11, 2016, Hearing, Exhibit C-4, May 7, 2015, Application to Reactivate License, ¶ 18 at 2.)  While it is true that a license reactivation or renewal is, for the most part, a ministerial act, and does not provide grounds for estopping a licensing board from taking disciplinary action,[12] the reactivation in the present case is nonetheless indicative that the Board, presumably, did not consider Licensee to present an *immediate* danger in practicing his licensed activity.  *See Abruzzese v. Bureau of Prof'l & Occupational Affairs, State Bd. of Cosmetology*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 1121 C.D. 2017, filed April 16, 2018), slip op. at 13 (court rejected the board's argument that it did not know whether it was safe for the licensee to perform esthetician services where it knew about her drug history and arrest when it granted her a license by virtue of the fact that she had disclosed her arrest and pending criminal charges on her application.)

---

[12] *See Denier v. State Bd. of Medicine, Bureau of Prof'l & Occupational Affairs*, 683 A.2d 949, 953 (Pa. Cmwlth. 1996) (holding that, where the board was aware of the licensee's court-martial conviction when it ministerially renewed his license, the renewal did not estop it from later instituting proceedings to suspend or revoke his license eight months later).

Accordingly, we reverse the Board's order and remand for consideration of Licensee's mitigating evidence and imposition of penalties that are commensurate with the circumstances.

 

 

 

 

 

 

_____

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

 

Judge Simpson Concurs in the result only.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Eric C. Levengood,                              :
                            Petitioner           :
                                                        :
                v.                              :        No. 947 C.D. 2017
                                                        :
Bureau of Professional and                :
Occupational Affairs, State Board       :
of Vehicle Manufacturers, Dealers      :
and Salespersons,                           :
                            Respondent          :

# O R D E R

AND NOW, this 10th day of May, 2018, the order of the State Board of Vehicle Manufacturers, Dealers and Salespersons is hereby REVERSED and this case is REMANDED to the Board for further proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge