IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Norman Steinberg, R.PH., | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 681 C.D. 2020 |
| | : | Argued:  April 15, 2021 |
| Bureau of Professional and | : | |
| Occupational Affairs, State | : | |
| Board of Pharmacy, | : | |
| | : | |
| Respondent | : | |

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                         FILED:  August 18, 2021


Norman Steinberg, R.PH. (Licensee) petitions for review of the order of the Bureau of Professional and Occupational Affairs, State Board of Pharmacy (Board) that revoked his pharmacist license, based on Licensee's 2003 conviction for violating the Pharmacy Act.[1]  After careful review, we affirm.

The facts and procedural history of this matter are not in dispute. Licensee holds a pharmacist license, originally issued on January 27, 1972, and active through September 30, 2004.  Reproduced Record (R.R.) at 3a.[2]  Licensee's

_____

[1] Act of September 27, 1961, P.L. 1700, *as amended*, 63 P.S. §§390-1 – 390-13.

[2] Pa. R.A.P. 2173 states:  "Except as provided in Rule 2174 (tables of contents and citations), the pages of . . . the reproduced record . . . shall be numbered separately in Arabic **(Footnote continued on next page…)**

pharmacist license was reactivated on December 2, 2015, renewed on October 31, 2016, and expired on September 30, 2018. R.R. at 77a, 82a.

From January 3, 1996, to April 30, 1997, Licensee, trading as Chelten Pharmacy, violated the federal Drug Abuse Prevention and Control Law, 21 U.S.C. §§801-971, specifically Section 843(a)(4)(A) of the statute,[3] when he knowingly or intentionally omitted material information from records required by law to be made, kept, and filed, including records of sale, delivery, or other disposition of approximately 410,000 tablets containing alprazolam, commonly known as Xanax, which is a Schedule IV controlled substance. R.R. at 4a, 15a. Licensee sold his pharmacy in April 1997 and moved to Costa Rica. *Id.* at 83a-84a. Licensee is a citizen of Costa Rica and of the United States, and he has resided in Costa Rica from 1997 to the present. *Id.* at 83a, 137a, 139a. While living in Costa Rica, Licensee has not practiced pharmacy. He has engaged in publishing, handicapping, and other

---

figures and not in Roman numerals: thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc." Although the pagination of Licensee's Reproduced Record does not conform to the foregoing Rule, we will cite to the relevant pages as required by the Rule.

[3] This section states, in relevant part:

> (a) Unlawful acts
>
> It shall be unlawful for any person knowingly or intentionally--
>
> * * *
>
> (4)(A) to furnish false or fraudulent material information in, or omit any material information from, any application, report, record, or other document required to be made, kept, or filed under this subchapter or subchapter II . . . .

21 U.S.C. §843(a)(4)(A).

activities relating to international sports betting and prognostication, which has been a life-long interest. *Id.* at 85a, 101a-04a.

Licensee traveled from Costa Rica to the U.S. in 2002 because his son was ill, and he was arrested in the Miami Airport by law enforcement officials on an outstanding warrant for the federal drug violations. R.R. at 86a. Licensee was indicted on four counts of violating federal drug law. *Id.* at 11a-15a. Licensee was detained and transported to Pennsylvania, where he was later released on bond. *Id.* at 86a-87a. On October 10, 2003, Licensee pleaded guilty in the United States District Court for the Eastern District of Pennsylvania in the case of *United States v. Norman Steinberg t/a Chelten Pharmacy*, (E.D.Pa. No. 99-594), to Count IV of the indictment, a misdemeanor, for "Omitting Material Information from Required Records" in violation of 21 U.S.C. §843(a)(4)(A), and Counts I, II, and III were dismissed. *Id.* at 16a. On May 27, 2005, the court entered judgment, sentenced Licensee to time served, and ordered him to pay the maximum fine of $30,000. *Id.* at 16a-36a. After his arrest, through sentencing, and for several years thereafter, Licensee cooperated with, provided information for, and assisted federal law enforcement officials in several jurisdictions with their ongoing investigations into illegal gambling and related activities. *Id.* at 104a-10a; 120a-27a.

On July 11, 2016, the Bureau of Professional and Occupational Licenses (Bureau) filed an Order to Show Cause to consider professional discipline against Licensee for his federal drug law conviction, which constituted a violation of Section 5(a)(2) of the Pharmacy Act.[4] R.R. at 1a-8a. Licensee filed a response

---

[4] Section 5(a)(2) of the Pharmacy Act provides, in relevant part:

**(Footnote continued on next page…)**

3

to the Order to Show Cause and requested a hearing to present mitigating evidence. *Id.* at 23a-30a. The hearing before the Board-appointed hearing examiner took place on January 12, 2017, at which Licensee and the Bureau were represented by counsel. *Id.* at 63a-64a. The Bureau presented documentary evidence of Licensee's conviction. Licensee presented documentary evidence and his own testimony in support of mitigation. Licensee also presented the testimony of Melanie Zimmerman, the Board's Executive Secretary, for details on Licensee's application to reactivate his license. *Id.* at 65a-66a. The hearing examiner circulated a proposed adjudication on June 6, 2017, recommending Licensee's license be revoked. *Id.* at 234a-56a. The Board filed a Notice of Intent to Review the hearing examiner's decision. *Id.* at 257a. Licensee filed exceptions to the hearing examiner's proposed adjudication, focusing on the proposed revocation, and arguing the hearing examiner mischaracterized the evidence presented. *Id.* at 258a-80a. The Board reviewed the entire record, including Licensee's exceptions, and issued its Final Adjudication and Order on June 22, 2020, revoking Licensee's pharmacist license. *Id.* at 281a-94a.

---

(a)     The board shall have the power to refuse, revoke or suspend the license of any pharmacist upon proof satisfactory to it that the pharmacist:

* * *

(2) Has been found guilty, pleaded guilty, entered a plea of nolo contendere, or has received probation without verdict, disposition in lieu of trial or an Accelerated Rehabilitative Disposition in the disposition of felony charges, to any offense in connection with the practice of pharmacy or any offense involving moral turpitude before any court of record of any jurisdiction[.]

63 P.S. §390-5(a)(2).

4

In its decision, the Board concluded, and the parties did not dispute, that Licensee's federal drug law conviction was directly connected with the practice of pharmacy, thus subjecting him to the Board's jurisdiction and discipline under Section 5(a)(2) of the Pharmacy Act. The Board stated: "This conviction alone establishes that [Licensee] was the pharmacy owner during a thirteen-month period during which the criminal action was occurring, resulting in 410,000 tablets being unaccounted for." R.R. at 288a. The Board considered each of Licensee's exceptions before determining the appropriate sanction. *Id.* The Board considered Licensee's assistance to federal authorities, but did not find it relevant to his culpability for the Pharmacy Act violation. The Board stated: "Additionally, it should be noted that in considering [Licensee's] criminal culpability, the Board is not concerned with the degree of assistance provided to the U.S. Attorneys by [Licensee], as those efforts only speak to the mitigation of his criminal sentence." *Id.* at 288a-89a. The Board was not persuaded by Licensee's contention that his lenient sentence was "based on the justice system's view of the crime itself." *Id.* at 289a. The Board concluded that Licensee received a lenient sentence because of the assistance that he provided to federal authorities for their international gambling investigation, and "not because the justice system viewed his crime as not being serious. As such, the Board finds this argument without merit." *Id.*

The Board also addressed Licensee's argument that he deserved a lesser sanction because of the age of the conviction. The Board concluded that, "[w]hile the action may have occurred several years ago, the Board did not learn of his conviction until at least 2014 and that information was not passed along to the legal department until at least December 2015." R.R. at 289a. The Board stated that Licensee's criminal charges "stem from [Licensee's] lack of supervision and

oversight resulting in 410,000 tablets being unaccounted for. [Licensee] does not have an explanation for his behavior, but rather blames his employees for their behavior and notes his failure to supervisor them properly." *Id.* The Board concluded that

> [Licensee's] behavior was egregious, and he offers nothing of substance in mitigation of that behavior. Instead, [Licensee] bombards the Board with his stories of his assistance to U.S. Attorneys, relating to gambling and money laundering cases, but his actions do little to establish his competency or trustworthiness to practice as a pharmacist.

*Id.* at 290a.

In determining that revocation is the appropriate sanction in this case, the Board agreed that the purpose of discipline is "not to exact retribution" against Licensee, but rather to "protect public health and safety." R.R. at 289a. The Board stated that "[t]he sole fact that 410,000 tablets went unaccounted for under [Licensee's] supervision proves that [Licensee] is not responsible enough to be trusted to engage in the practice of pharmacy." *Id.* The Board also stated that "the sanction imposed needs to send the appropriate message to [Licensee] that accountability and responsibility regarding compliance with the Pharmacy Act and the Board's regulations rest solely with the licensee." *Id.* at 290a. The Board concluded: "Here, the Board finds that to fulfill its duty as protectorate of the public and to the integrity of the profession it needs to send a clear message about the severity of [Licensee's] violations—both to the citizens of the Commonwealth and to [Licensee] himself." *Id.* Licensee appealed the Board's decision to this Court.[5]

---

[5] This Court's scope of review is as follows:
**(Footnote continued on next page…)**

Licensee presents one question for review, whether the Board manifestly abused its discretion when it revoked Licensee's pharmacist license based on his conviction, which violated the Pharmacy Act. Licensee does not dispute that he was convicted of violating federal drug laws, nor does he dispute that this conviction is a violation of the Pharmacy Act. Licensee argues that the Board manifestly abused its discretion when it failed to consider the mitigating evidence that he presented, and when it imposed the ultimate discipline of revoking his pharmacist license based on his 2003 conviction and 2005 sentencing, which occurred approximately 10 years before the Bureau issued its Order to Show Cause.[6]

Licensee relies primarily on two cases to support his mitigation arguments. In *Secretary of Revenue v. John's Vending Corporation*, 309 A.2d 358 (Pa. 1973), a licensee's shareholder was convicted of several crimes of moral turpitude 20 years before the licensee applied for his vending license. The shareholder's crimes involved selling untaxed liquor, possessing and transporting unstamped whiskey, and selling opium derivatives. Our Supreme Court reversed the licensee's license revocation, holding that the convictions from 20 years earlier failed to provide any basis to evaluate his present character, where the record showed

---

Unless the occupational licensing board is accused of bad faith or fraud, . . . the scope of appellate review of the board's disciplinary sanction is "limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions."

*Ake v. Bureau of Professional and Occupational Affairs, State Board of Accountancy*, 974 A.2d 514, 519 n.6 (Pa. Cmwlth. 2009)(citations omitted).

[6] Licensee sought a stay of the Board's June 22, 2020 order that revoked his pharmacist license, which this Court denied in a Memorandum Opinion and Order dated August 11, 2020.

that he had worked without incident as a wholesale cigarette dealer for 12 years before the license revocation.  *Id.* at 362.

The second case that Licensee relies on is *Ake v. Bureau of Professional and Occupational Affairs, State Board of Accountancy*, 974 A.2d 514 (Pa. Cmwlth. 2009).  In *Ake*, the board revoked a licensee's certified public accountancy (CPA) certificate and license based on his conviction for criminal harassment in Illinois seven years earlier.  The licensee argued that the board abused its discretion when it imposed the maximum penalty, revocation, for a seven-year-old conviction that was not related to his profession as an accountant.  The licensee further argued that the board abused its discretion by not considering additional mitigation evidence, namely, that he truthfully disclosed his conviction, that he participated in counseling and community service to become rehabilitated, and that he needed his accountancy license to maintain gainful employment.  *Id.* at 515-516.  In *Ake*, this Court recognized that the board "exercises considerable discretion in policing its licensees. However, this Court is 'required to correct abuses of discretion in manner or degree of penalties imposed.' *Foose v. State Board of Vehicle Manufacturers, Dealers and Salespersons*, 578 A.2d 1355, 1359 (Pa. Cmwlth. 1990)."  *Ake*, 974 A.2d at 519. This Court vacated and remanded the licensee's revocation, and held that although the licensee's harassing conduct in Illinois was deplorable, it did not relate to character qualities identified as central to holding a CPA license under the CPA Law,[7] which governed.  *Ake*, 974 A.2d at 520.

Here, Licensee testified that he cooperated with federal authorities in numerous federal jurisdictions including the Southern District of Florida, the Eastern District of Pennsylvania, the Western District of Pennsylvania, and the Eastern

---

[7] Act of May 26, 1947, P.L. 318, *as amended*, 63 P.S. §§ 9.1-9.16b.

District of Missouri, to assist in their investigations of illegal gambling. R.R. at 106a, 126a, 232a-33a. Based on his cooperation in their investigations, U.S. Attorneys argued for, and Licensee received, a reduced sentence for his drug violation, which Licensee refers to repeatedly as a "record keeping violation." *Id.* at 108a, 140a. Licensee argues that his guilty plea to one drug violation and the sentence that followed were influenced by his cooperation with the federal authorities in their gambling investigations. Licensee argues that because the federal authorities used his cooperation to support leniency in his drug violation, his cooperation must be considered to mitigate his culpability for the Pharmacy Act violation. Licensee points to comments from the federal authorities in the downward deviation sentencing memorandum as mitigation evidence.[8] Licensee testified that although he was the supervising pharmacist, it was his employees, not himself, who improperly ordered and disposed of the Xanax. *Id.* at 90a-92a. Licensee testified

___

[8] At the Board hearing, Licensee requested that the sentencing memorandum be sealed because of potential danger to him from those being investigated. Following a discussion among the parties, the hearing examiner denied Licensee's motion to seal, and the documents were admitted. R.R. at 108a-16a. Licensee relies upon statements contained in the sentencing memorandum, specifically those contained in a footnote, to support mitigation:

> The Probation Office calculated a higher offense level and sentencing range (level 23, with a range beginning at 46 months) counting as relevant conduct quantities of Schedule II controlled substances charged in counts to which [Licensee] did not plead guilty. The government agreed to the more limited guilty plea and guideline calculation following a review of the available evidence more than six years after the pharmacy audit in question, and a proffer by [Licensee] credibly calling into question the veracity and innocence of one of his former employees. In short, the government did not view the evidence as justifying inclusion of the Schedule II controlled substances. The government, of course, must and does adhere to the stipulations reflected in the plea agreement.

R.R. at 199a.

9

that he accepted responsibility as "captain of the ship," agreed that he should have supervised his employees more closely, but maintained they were responsible. *Id.* at 136a.

Licensee argues that his 2003 conviction under the federal drug law would not stand under current law, which was amended shortly after the underlying events occurred. Licensee argues that because the current law requires negligence for record-keeping violations, he likely would not have been charged or convicted today.

Licensee also argues that the Board's revocation was not related to public safety concerns. He argues that the Board capriciously disregarded mitigation evidence when it failed to adopt any of the 75 proposed findings in his post-hearing brief, which outlined his extensive cooperation with authorities in their illegal gambling investigations. Licensee argues that the Board's finding that it "is not concerned with the degree of assistance provided to U.S. Attorneys by [Licensee], as those efforts only speak to mitigation of his criminal sentence" evidences its capricious disregard of the mitigation evidence. R.R. at 288a-89a.

The Board responds that the revocation of Licensee's pharmacy license should be affirmed because it did not manifestly abuse its discretion. The Board argues that Licensee is asking this Court to reweigh the evidence, and to conclude the sanction of revocation is unreasonable, which it may not do under the applicable standard of review. Otherwise, this Court's review would "swallow up the whole system of administrative adjudications, in which administrative bodies having expertise in specific areas of law are entrusted to fashion administrative remedies that are fair and appropriate." *Slawek v. Board of Medical Education and Licensure*, 586 A.2d 362, 366 (Pa. 1991). The Board argues that an agency's decision is

10

arbitrary and capricious only where there is no rational connection between the facts found and the choices made. The weight that the Board assigns to mitigation evidence is a matter within its discretion. *Burnworth v. State Board of Vehicle Manufacturers, Dealers and Salespersons*, 589 A.2d 294, 296 (Pa. Cmwlth. 1991). The Board contends that this Court should not substitute its judgment for that of the Board on matters of professional competence.

The Board agrees that Licensee's conviction was for a record-keeping violation. However, the behavior underlying the conviction was his failure to account for 410,000 missing Xanax tablets, a controlled substance, in a Pennsylvania pharmacy that he owned and in which he was working. After the violations came to light, Licensee sold his pharmacy and went to live in Costa Rica to continue his gambling business, where he lived and worked from 1997 to 2002. License returned to the U.S. in 2002 because his son was ill, and he was arrested in the Miami Airport on his outstanding warrant. The Board notes that Licensee did not voluntarily surrender, as he misstates in his brief.

The Board further responds that the cases on which Licensee relies are distinguishable. In *John's Vending*, the licensee's shareholder's conviction for tax and liquor violations occurred 20 years before the licensee had applied for a license, and the licensee had worked for 12 years without incident in his profession before being faced with a revocation. In *Ake*, the licensee's harassment conviction was unrelated to his chosen profession, was an isolated incident that took place over a two-week period, and he had not engaged in similar conduct since his arrest.

Here, the Board argues, Licensee's conduct and his conviction were directly related to the pharmacy profession. Licensee failed to account for 410,000 missing Xanax tablets over a 13-month period, meaning that approximately 1,000

11

pills went missing each day in which Licensee failed to act. The Board argues that it did not become aware of Licensee's 2003 conviction and 2005 sentence until 2015, when it arose during Licensee's application to renew. The Board argues that the nature of the offending conduct *and* its remoteness in time "must be considered for revocation actions." *Ake*, 974 A.2d at 520 (emphasis added).

The Board argues that its purpose under the Pharmacy Act is to regulate the practice of pharmacy for the protection and promotion of public health, safety, and welfare.[9] The Board argues that Licensee's revocation is related to this purpose and is the appropriate sanction so that other pharmacists are put on notice that one cannot merely leave the state to avoid discipline. The Board agrees that individuals have the right to pursue their lawful occupation, but this is not a fundamental right. It may be subject to limitations imposed by valid exercise of authorities to regulate professions as authorized by statute. *Nixon v. Commonwealth*, 839 A.2d 277, 288 (Pa. 2003).

The Board further responds that Licensee's argument that he would probably not be convicted today under amended federal law is mere speculation. Licensee was convicted under Section 843(a)(4)(A) of the United States Code, which was not amended, and not Section 842 of the United States Code, as Licensee suggests.[10] He pleaded guilty to Count IV of the indictment, which stated that he knowingly and intentionally omitted material information from required records.

The Board further responds that it did not err when it considered Licensee's mitigation evidence, but failed to give it the weight that Licensee had

---

[9] *See* Section 6(k)(9) of the Pharmacy Act, 63 P.S. §390-6(k)(9) ("The board shall have the power, and it shall be its duty . . . to regulate the distribution of drugs and devices and the practice of pharmacy for the protection and promotion of the public health, safety and welfare.").

[10] *Compare* 21 U.S.C. §843(a)(4)(A) *with* 21 U.S.C. §842.

12

hoped. The Board found that failing to account for 410,000 Xanax tablets showed that he was not responsible enough to remain a licensed pharmacist. Licensee's evidence of his cooperation with U.S. Attorneys on gambling cases did not mitigate his behavior, but merely afforded him a more lenient sentence. Although Licensee accepted responsibility as "captain of the ship," he blamed his employees for the wrongdoing, and noted that he should have supervised them better. He then moved to Costa Rica where he worked in the international betting industry, and not as a pharmacist. His assertion that the rest of his pharmacy record is clean is misleading because he has not worked as a pharmacist since 1997, when he moved to Costa Rica.

We are mindful that "[i]n the absence of bad faith, fraud, capricious action or abuse of power, reviewing courts will not inquire into the wisdom of the agency's action or into the details or manner of executing agency action." *Slawek*, 586 A.2d at 365. Here, Licensee does not dispute that his conviction was directly related to the practice of pharmacy, but he argues that it was too remote in time to justify revocation of his license. Relying on *Johns's Vending* and *Ake*, we conclude that although Licensee's conviction took place approximately 10 years before the Board took action, because it relates directly to his profession, the Board did not err in revoking his license. Although his conviction in 2003 and sentencing in 2005 occurred approximately 10 years before the Bureau issued an Order to Show Cause, the Board only became aware of the conviction in 2015, when Licensee applied to reactivate his pharmacy license. Further, we cannot conclude that the Board abused its discretion in considering Licensee's 2003 conviction, when the conviction is rationally connected to the Pharmacy Act's purpose of promoting and protecting public health, safety, and welfare.

13

We also conclude that the Board did not manifestly abuse its discretion in imposing the most severe penalty, revocation, on Licensee. The Board must consider mitigation evidence offered by Licensee, which the record shows that it did here. The Board concluded, however, that Licensee's cooperation with federal authorities on their international gambling investigations did not reduce his culpability for the violation of the Pharmacy Act. A Board may give greater weight to the seriousness of a licensee's criminal convictions than to mitigating evidence. *Burnworth*, 589 A.2d at 297.

Further, the Court may not reweigh the evidence presented to the Board, including the mitigation evidence that Licensee presented here. *Burnworth*, 589 A.2d at 296. The Board found that Licensee failed to fully accept responsibility for his actions, stating that he was responsible as "captain of the ship," but that it was his employees' fault for diverting the pills, and he admitted that he "just didn't keep an eye on matters." R.R. at 90a. Although the Board found that Licensee had no other Pharmacy Act violations, it failed to give significant weight to that fact because Licensee admitted that he did not practice pharmacy since he left for Costa Rica in 1997. We conclude that the Board did not manifestly abuse its discretion when it made these findings based on Licensee's testimony in the record. Further, we note that, unlike cases where licensees presented mitigating evidence such as showing that they needed their job to support their family, showing that they had taken steps to rehabilitate themselves from prior bad acts, or testimony from character witnesses as to their diligence and honesty, Licensee presented no such mitigating evidence.[11]

---

[11] *See, e.g.*, *Bentley v. Bureau of Professional and Occupational Affairs, State Board of Cosmetology*, 179 A.3d 1196, 1201 (Pa. Cmwlth. 2018) ("Here, the [b]oard's adjudication recited that it 'reviewed the entire record.' However, this conclusory recital cannot be reconciled with the [b]oard's adjudication, which does not address the hearing examiner's extensive findings on and discussion of [the licensee's] mitigating evidence.") (citations to the record omitted).

Here, in support of mitigation, Licensee offered only his own testimony and the federal sentencing memorandum, focusing on a footnote that does not relate to the charge of which Licensee was convicted, but to charges that were ultimately dismissed. Licensee testified that he did not need his license to make a living, that he was currently retired, and that he was doing pretty well. Licensee testified that he did not intend to return to Pennsylvania and practice pharmacy. R.R. at 138a, 141a-42a. Therefore, we conclude that the Board did not manifestly abuse its discretion when it considered Licensee's mitigation evidence, and determined that revocation was the appropriate sanction, based on Licensee's conviction for a crime directly related to the practice of pharmacy.

For the foregoing reasons, we affirm the Board's Order dated June 22, 2020.

MICHAEL H. WOJCIK, Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Norman Steinberg, R.PH.,                    :
                                             :
                    Petitioner               :
                                             :
            v.                               :  No. 681 C.D. 2020
                                             :
Bureau of Professional and                   :
Occupational Affairs, State                  :
Board of Pharmacy,                           :
                                             :
                    Respondent               :

# **O R D E R**

AND NOW, this 18th day of August, 2021, the Final Order of the Department of State, Bureau of Professional and Occupational Affairs, State Board of Pharmacy dated June 22, 2020, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge